UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LUKE G. SAHS** | * | **CIVIL ACTION NO. 2:24-cv-01379** |
| | * | |
| **VERSUS** | * | **SECTION: E (3)** |
| | * | |
| **LOYOLA UNIVERSITY** | * | **JUDGE SUSIE MORGAN** |
| **NEW ORLEANS** | * | |
| | * | **MAG. JUDGE EVA J. DOSSIER** |

**SUPPLEMENTAL BRIEF ON THE APPLICABILITY OF LA. C.C.P. ART. 971 IN FEDERAL COURT**

As this Court has requested in its recent Order (Rec. Doc. 58), defendant Loyola University New Orleans ("Loyola") submits this Supplemental Brief addressing the applicability of La. C.C.P. art. 971 in federal court in light of *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), *Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019), and Judge Graves's dissenting opinion in *Cuba v. Pylant*, 814 F.3d 701 (5th Cir. 2016). Loyola respectfully submits that under controlling Fifth Circuit precedents detailed below, Article 971 indeed applies in this diversity action, and the above-cited decisions do not dictate otherwise.

**I. The Supreme Court's decision in *Shady Grove* does not prevent La. C.C.P. 971 from applying in this case.**

In *Shady Grove*, the plaintiff filed a class action against the defendant insurer in federal court based on diversity jurisdiction, seeking to recover unpaid statutory interest allegedly owed on their insurance claims under New York law. 559 U.S. at 396-397. The Supreme Court addressed the issue whether a New York statute prohibiting class actions seeking to recover "statutory penalties" applied in the federal-court suit and thereby barred the class action, where Fed. R. Civ. P. 23 governing the requirements for class actions in federal court contained no such prohibition. *Id*. at 397-399. In a 4-4-1 plurality decision, Justice Scalia's majority opinion

1

employed a "framework" that was "familiar" to decide this issue: "We must first determine whether Rule 23 answers the question in dispute. . . . If it does, it governs—New York's law notwithstanding— unless it exceeds statutory authorization or Congress's rulemaking power." *Id*. at 398 (citing *Burlington Northern R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987) and *Hanna v. Plumer*, 380 U.S. 460, 463-464 (1965)).

In the *Burlington Northern R. Co.* decision cited above in *Shady Grove*, the Supreme Court held that under "the appropriate test for resolving conflicts between state law and the Federal Rules" set forth in *Hanna* "[t]he initial step is to determine whether" the particular Federal Rule's scope "is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of that law." *Burlington Northern R. Co.*, 480 U.S. 4-5 (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-750, and n. 9 (1980)). "The Rule must then be applied if it represents a valid exercise of Congress' rulemaking authority, which originates in the Constitution and has been bestowed on this Court by the Rules Enabling Act, 28 U.S.C. § 2072." 480 U.S. at 5 (citing *Hanna*, 380 U.S. at 471-474).

Applying these principles in *Shady Grove*, the majority opinion held that Fed. R. Civ. P. 23, a valid rule of procedure under 28 U.S.C. §2072(a), controlled the case and that the New York statute, which prevented the class action, did not apply in the diversity suit in federal court, because Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action" and conflicts with the New York class-action statute, which imposed "additional requirements" on the same threshold class-action question, i.e., "whether a class action may proceed for a given suit." 559 U.S. at 398-401. As the majority opinion in *Shady Grove* noted, the policies of Rule 23 and the New York statute were incompatible, "flatly contradict each other," and presented an unavertable "collision with state law." *Id*. at 405-406.

When the Federal Rule and the state law at issue do not directly conflict, however, the aforementioned test under "the *Hanna* analysis does not apply," and the Court instead applies the policies underlying *Erie R. Co. v. Tomkins*, 304 U.S. 64 (1938) and its progeny to determine if the state law applies in federal court in a diversity action. *Walker v. Armco Steel Corp.*, 446 U.S. at 752-753. As the Supreme Court has recognized, "the twin aims of the *Erie* rule" are "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna*, 380 U.S. at 468. In this regard "under *Erie* and its progeny," when a federal court decides whether to apply state law in a diversity case, "the importance of a state rule is indeed relevant, but only in the context of asking whether application of the rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State," or whether the state rule's application "would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court." 380 U.S. at 468 and n. 9.

In *Henry v. Lake Charles American Press, L.L.C.*, 566 F.3d 164 (5th Cir. 2009), in reviewing the denial of a motion to strike under La. C.C.P art 971, the Fifth Circuit unequivocally held that "Louisiana law, including the nominally-procedural Article 971, governs this diversity case." *Id.* at 168-169 (citing *Erie R. Co.*, 304 U.S. at 78). In so holding, the Fifth Circuit in *Henry* further cited two Ninth Circuit decisions holding that a motion to strike under California's similar anti-SLAPP law applies in federal court under the *Erie* doctrine. *Id.* at .169 (citing *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972–73 (9th Cir.1999); *Thomas v. Fry's Electronics, Inc.*, 400 F.3d 1206, 1207 (9th Cir. 2005) (reaffirming *Newsham*).

The *Henry* opinion noted that Article 971—whose purpose is to "weed out and dismiss" meritless claims that chill "the exercise of First Amendment rights"—is an important statute that

3

furthers "the substantial public interest of protecting those exercising their First Amendment rights" and "embodies a legislative determination that parties should be immune from certain abusive tort claims that have the purpose or effect of imperiling First Amendment rights." *Id*. at 169-170, 177-178, and 180-181. In *Henry*, the Fifth Circuit applied the elements of Article 971, concluded that the defendant had made its prima facie showing and that plaintiff had not shown a probability of success as the Louisiana anti-SLAPP statute required, reversed the district court's judgment that had denied the Article 971 motion, dismissed the plaintiff's defamation claim, and remanded the matter for a determination of attorney's fees and costs under Article 971(B). *Id*. at 181-183.

In *Newsham*, which the Fifth Circuit cited as authority for applying Article 971 as the governing law in *Henry*, the Ninth Circuit held that the threshold question in determining if the California anti-SLAPP statute properly applies in federal court was "whether such an application would result in a 'direct collision' with the Federal Rules." 190 F.3d at 972 (citing *Walker v. Armco Steel Corp.*, 446 U.S. at 749–50). The Ninth Circuit held that the California statute and the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 12 and 56, did not conflict or collide:

> If unsuccessful, the litigant remains free to bring a Rule 12 motion to dismiss, or a Rule 56 motion for summary judgment. We fail to see how the prior application of the anti-SLAPP provisions will directly interfere with the operation of Rule 8, 12, or 56. In summary, there is no "direct collision" here.

*Id.* Having found no conflict between the state law and the Federal Rules, the Ninth Circuit in *Newsham* then considered *Erie*'s policies and held that the California anti-SLAPP statute applied in federal court. 190 F.3d at 973. The Ninth Circuit noted that the California statue furthered "important, substantive state interests" that were "not directly addressed by the Federal Rules"— namely "the protection of 'the constitutional rights of freedom of speech'"—and that "the twin purposes of the *Erie* rule—'discouragement of forum-shopping and avoidance of inequitable

4

administration of the law'—favor application of California's Anti-SLAPP statute in federal cases" to discourage plaintiffs from shopping for a federal forum to avoid the fees and costs provisions of the state statute and to deprive the defendant of its protections.  *Id*.

In *CoreCivic, Inc. v. Candide Group, LLC*, 46 F.4th 1136, 1138 (9th Cir. 2022), the Ninth Circuit reiterated these principles and held that *Shady Grove* was not "clearly irreconcilable" with the Ninth Circuit's "long line of precedents holding that California's anti-SLAPP statute applies in federal court" and did not require overruling those prior cases.  The *CoreCivic, Inc.* opinion reaffirmed the *Newsham* decision finding no conflict between the state law and the Federal Rules, noted that the Ninth Circuit has continued to apply the California anti-SLAPP statute in federal diversity actions since *Shady Grove*, and concluded that—in determining whether a Federal Rule "answers the same question" as the state law at issue—the *Shady Grove*'s majority opinion applied the same "direct collision" analysis employed in *Newsham*.  *Id*. at 1140-1143.

In so concluding, the Ninth Circuit in *CoreCivic* noted that "under a *Shady Grove* analysis" in *Godin v. Schencks*, 629 F.3d 79, 86 and 91 (1st Cir. 2010), the First Circuit had quoted *Newsham*'s reasoning with approval in applying Maine's anti-SLAPP statute in federal court.  *CoreCivic, Inc.,* 46 F.4th at 1143.  Indeed, the First Circuit in *Godin* cited both the Fifth Circuit's opinion in *Henry* and the Ninth Circuit's in *Newsham* as exemplary decisions respectively applying Louisiana's and California's anti-SLAPP statutes in federal-court actions.  629 F.3d at 81 and 91.

The First Circuit's decision in *Godin* correctly recognized that the majority opinion in *Shady Grove* "uses the language of 'potential conflict,' 'compatible' and 'collision with state law'" and "characterizes the first step of the analysis as 'determining whether the federal and state rules can be reconciled (because they answer different questions).'"  629 F.3d at 87-88.  The *Godin* court held that Fed. R. Civ. P. 12(b)(6) and 56 "are not so broad as to cover the issues within the

5

scope of" the Maine anti-SLAPP statute, which "does not seek to displace the Federal Rules" or have them "cease to function" as a "substitute to the Federal Rules." *Id*. at 88. Rather, Maine's anti-SLAPP statute is a "supplemental and substantive rule" that "serves the entirely distinct function of protecting those specific defendants that have been targeted with litigation on the basis of their protected speech." *Id*. at 88-89. The *Godin* decision further recognized that a special motion under the Maine anti-SLAPP statute—which permits the court "to look beyond the pleadings to affidavits and material of record" and which allows specific discovery for good cause—"will be resolved just as summary judgment motions under Fed.R.Civ.P. 56 are" and that "[t]he Maine statue, in imposing on the opponent of the motion the burden of justifying discovery, is consistent with the allocation of burdens under Rule 56(d), formerly Rule 56(f)." *Id*. at 90.

Thus, the *Godin* court concluded that Rules 12 and 56 were not intended to "'occupy the field with respect to pretrial procedures aimed at weeding out meritless claims,'" but that "[r]ather, Rules 12 and 56 'can exist side by side'" with the Maine anti-SLAPP statute, "'each controlling its own intended sphere of coverage without conflict.'" 629 F.3d at 91 (quoting *Newsham*, 190 F.3d at 972, and further citing *Henry*, 566 F.3d at 169-170, as "enforcing Louisiana's anti-SLAPP statute in federal court"). The First Circuit held that applying the Maine statute in federal court "would best serve the 'twin aims of the *Erie* rule'" to prevent "an inequitable administration of justice" denying the defendant the Maine statute's special defenses, including "attorney's fees or costs," and remove strong "incentives for forum shopping." *Id*. at 91-92.

Likewise, in the instant case, the issue of the "applicability" of La. C.C.P. art. 971 in Louisiana federal district courts is a question whether Article 971 conflicts with or is in "direct collision" with the Federal Rules of Civil Procedure. Under *Henry* and the foregoing persuasive

decisions from the Ninth and First Circuits, there is no such conflict, and Article 971 indeed applies in federal court under an *Erie* analysis.

Indeed, since *Shady Grove*, the Fifth Circuit has expressly held that Article 971 is equivalent to and does not conflict with Rule 56.  In *Lozovyy v. Kurz*, 813 F.3d 576, 583-585 (5th Cir. 2015), the Fifth Circuit recognized that under Louisiana caselaw Article 971 motions are "akin to [ ] motion[s] for summary judgment" and that *Henry* "[u]ltimately frames the 'probability of success' standard [of Article 971] as 'akin to a court determining only that a plaintiff has presented a threshold showing that allows her claim to proceed' by making a 'prima facie showing of facts to sustain a favorable judgment."  The Fifth Circuit in *Lozovyy* reiterated that Article 971 is similar to the "virtually identical" California Anti-SLAPP statute, that Louisiana courts "have looked to California precedent in interpreting Louisiana's provisions," and that California courts have likewise equated the burden of proof in its anti-SLAPP statute to the standard for obtaining a summary judgment, which is "persuasive in predicting how the Louisiana Supreme Court would construe Article 971's 'probability of success' standard." *Id.* at 584. The *Lozovyy* court further noted that Louisiana's statutory amendment of La. C.C.P. art. 966 "brought 'Louisiana's standard for summary judgment closely in line with the federal standard under Fed. Rule Civ. Proc. 56(c).'" *Id*. at 585 (citing *JCM Const. Co., Inc. v. Orleans Parish Sch. Bd.*, 860 So.2d 610, 634 (La. App. 4 Cir. 2003)). And the *Lozovyy* decision concluded that Article 971 codifies "a standard that Louisiana courts have since suggested is akin to the federal standard" and that "the Louisiana Supreme Court would recognize that Article 971's standard does not permit courts to weigh evidence, assess credibility, or resolve disputed issues of material fact."  *Id*. at 586.

In *Block v. Tanenhaus*, 815 F.3d 218, 221 (5th Cir. 2016), the Fifth Circuit rejected the plaintiff's argument that Article 971 "requires the non-movant to meet a stricter burden than that

imposed by" Fed. R. Civ. P. 56 and therefore does not apply in federal court. Citing *Henry*, the Fifth Circuit in *Block* noted that it "previously applied Article 971 in a diversity case," stated that under the *Lozovyy* holding "a non-movant's burden under Article 971 is functionally equivalent to that under Rule 56," and held that Article 971 "provides the same standard as Rule 56; thus there is no conflict on that basis." *Id*. 815 F.3d at 221 and n.2.

Unlike the New York class-action statute at issue in *Shady Grove*, Louisiana's anti-SLAPP statute, La. C.C.P. art. 971, poses no conflict with the Federal Rules of Civil Procedure, but rather is fully compatible and consistent with them. Article 971 therefore applies in diversity actions in federal court under *Erie*, as the Fifth Circuit recognized in *Henry*, because it furthers the important public interest in protecting the defendant's First Amendment rights. Refusing to apply the Louisiana statute would unjustly deny Loyola its protections in federal court and would encourage forum shopping contrary to *Erie*'s twin aims. Nothing in the Supreme Court's decision in *Shady Grove* requires a different analysis or conclusion.

## II. The Fifth Circuit's decision in *Klocke* and Judge Graves's dissenting opinion in *Cuba* do not prevent La. C.C.P. 971 from applying in this case.

In *Klocke v. Watson*, 936 F.3d 240, 245 (5th Cir. 2019), citing the majority opinion's analysis in *Shady Grove*, the Fifth Circuit held that the Texas anti-SLAPP statute does not apply in federal court, because the Texas statute's "burden-shifting framework imposes additional requirements beyond those found in Rules 12 and 56 and answers the same question as those rules." The *Klocke* decision noted that "[i]n contrast to the federal procedural requirements," the Texas anti-SLAPP statute—which requires a court considering the motion to "weigh the evidence" and determine "by a preponderance of the evidence" whether the plaintiff has "clear and specific evidence" to prove each element of his claim—thereby "imposes additional requirements that demand judicial weighing of evidence" under a standard "that exceeds the plaintiff's Rule 56

8

burden to defeat summary judgment" and thereby "conflicts" with the Federal Rules that "answer the same question." 936 F.3d at 246-247.  In his dissenting opinion in *Cuba v. Pylant*, 814 F.3d 701, 718-719 (5th Cir. 2016), on similar reasoning that the Fifth Circuit later employed in *Klocke*, Judge Graves likewise had concluded that the Texas anti-SLAPP statute conflicted with the Federal Rules and was inapplicable in federal court under the *Shady Grove* analysis.  The *Klocke* decision cites Judge Graves's dissent with approval.  936 F.3d at 244.

Importantly, in ruling on the applicability of the Texas statute at issue, the Fifth Circuit in *Klocke* acknowledged that in *Henry* it had applied La. C.C.P. 971 in federal court "pursuant to the *Erie* doctrine." 936 F.3d at 244 and 248.  The *Klocke* panel expressly distinguished *Henry* from *Klocke*, however, noting the differences between the two states' anti-SLAPP statutes:

> Although this question is not free from doubt, we conclude that *Henry* is not binding on this panel under our rule of orderliness. *United States v. Boche-Perez,* 755 F.3d 327, 334 (5th Cir. 2014) ("[A] panel of the court cannot overturn a prior panel decision absent an intervening change in the law ....") (quotation marks omitted). *Henry* interprets a different statute, albeit a different version of an anti-SLAPP statute. The two states' laws differ in that Texas imposes higher and more complex preliminary burdens on the motion to dismiss process and imposes rigorous procedural deadlines. The conflict between the Texas law and the Federal Rules is manifest, while the comparable conflict between the Federal Rules and Louisiana law is less obvious.

*Id.* at 248-249 and n. 7 (citing by example the Fifth Circuit's decision in *Block*, 815 F.3d at 221, which held that the non-movant's burden to oppose a motion to strike under Article 971 and to oppose a summary-judgment motion under Rule 56 is "the same").  Judge Graves, a member of the panel in *Block*, concurred only in the judgment in that case.  815 F.3d at 220.

Indeed, as discussed above, in *Lozovyy* and *Block*, the Fifth Circuit held that Article 971—which does not allow the court to weigh evidence, assess credibility, or resolve disputed issues of material fact—thereby comports with Rule 56 and does not conflict with it.  In contrast, as noted above, the Fifth Circuit in *Klocke* held that the Texas anti-SLAPP statute imposes a higher burden

9

of proof by clear and specific evidence on the plaintiff and requires the court to weigh the evidence in conflict with the Federal Rule.

The Fifth Circuit in *Klocke* further remarked that "there is no indication in *Henry* that the court considered the potential overlap or conflict between the Louisiana anti-SLAPP provision and the Federal Rules" and that "the *Henry* panel did not have the benefit of the Supreme Court's compelling decision in *Shady Grove*." *Id*. at 249. But in applying Article 971 in federal court under *Erie*, the Fifth Circuit in *Henry* implicitly considered the state statute in light of the Federal Rules by citing the Ninth Circuit's detailed decision in *Newsham*, which held that the nearly identical California anti-SLAPP statute does not conflict with the Federal Rules and applies in federal court under the *Erie* analysis. And, as discussed above, after *Shady Grove*, the Fifth Circuit has twice held in *Lozovyy* and *Block* that Article 971 and Rule 56 do not conflict, and the Ninth Circuit in *CoreCivic, Inc.* reaffirmed *Newsham* reaching the same result.

Accordingly, the Fifth Circuit's decision in *Klocke* and Judge Graves's dissenting opinion in *Cuba* interpreting the dissimilar Texas anti-SLAPP statute are distinguishable from *Henry* and do not affect it in any way. The *Henry* decision—which holds that Article 971 applies in federal court under *Erie*—has never been overruled, and it remains as binding Fifth Circuit precedent on that issue in this case, consistent with Supreme Court and Fifth Circuit caselaw.

### III.    La. C.C.P. 971 applies in this case and does not conflict with the Federal Rules

The facts and procedural history of the instant case plainly show that Article 971 applies in this diversity action and poses no conflict with the Federal Rules. As *Henry* authorizes, Loyola filed its special motion to strike under the Louisiana anti-SLAPP statute, and both parties have submitted affidavits and evidence in support of their positions on the motion, a procedure consistent with both Article 971 and Rule 56. Under *Lozovyy* and *Block*, the parties' applicable

burdens are the "same" under the Louisiana statute and Rule 56, and this Court decides the motion under their summary-judgment standards that are functionally equivalent and do not conflict.

Article 971(D)'s discovery provisions, which do not materially differ from Fed. R. Civ. P. 56(d), also do not prevent the Louisiana statute from applying in this case. This is not a case where Sahs has been unfairly deprived of necessary discovery under Article 971. The abundance of evidence before the Court more than suffices for the Court to rule on the pending Article 971 motion. That evidence includes police reports from both the Loyola Police Department ("Loyola PD") and the New Orleans Police Department ("NOPD") concerning the criminal complaint and subsequent arrest of Luke Sahs on March 2, 2023, copies of the allegedly defamatory publications at issue, an audio recording between the Loyola PD and the Loyola journalist who wrote the first article about the investigation and arrest of Sahs, and, perhaps most significantly, the NOPD Axon body camera video ("NOPD Video") (Exhibit 4 to Rec. Doc. 49-2) from the night of his arrest, which indisputably proves that he has no actionable claim and that Loyola's actions were privileged, reasonable, and truthful in reporting on his investigation and arrest.

In the NOPD Video, Sahs admits that: (1) he has a history of making bombs (*See* NOPD Video at 30:58 - 31:24 and 32:20 - 32:29); (2) that he was making statements on his school-sponsored Honduras trip to other students about "chemical weapons" and "bombs" (*Id.* at 12:50 – 13:50); (3) that he was bragging about being involved in filming a bomb explosion in a restaurant bathroom in Florida and offering video proof of this (*Id.* at 15:00 – 15:22 and 31:26 – 32:01); (4) that he was searching on the internet for people selling dangerous toxic chemicals and lying about his access to pure zinc and white phosphorous (*Id.* at 12:56 – 13:16, 33:20 -34:00); and (5) that he understands that his statements were scary and could be terrifying to people. (*Id.* at 38:25 – 39:05).

The Court does not need to weigh evidence on any of these points because Sahs's admissions speak for themselves.

Accordingly, there is no viable argument that Article 971's discovery provisions create a conflict or cause any unfair result in this case. No party has claimed that additional discovery is necessary for the Court to decide the Article 971 motion. Indeed, when Loyola filed a motion to stay discovery pending a ruling on its motion to strike (Rec. Doc. 48), Sahs did not oppose it, and the Court denied the motion as moot (Rec. Doc. 55) upon recognizing that the parties have agreed to stay discovery under Article 971. Further, Sahs's counsel recently consented to Loyola's request to subpoena the NOPD's complete files of this criminal investigation on the express condition that Loyola would not submit any additional NOPD evidence on the motion to strike. Sahs cannot demand that no further evidence be submitted on the pending motion to strike and then argue that Article 971 deprives him from obtaining necessary discovery in this case.

Finally, Article 971(B)'s provisions for attorney's fees and costs likewise pose no conflict with the Federal Rules. In *Henry*, the Fifth Circuit enforced those provisions of the Louisiana anti-SLAPP statute as applicable law in federal court. 566 F.3d at 183. Rule 56 contains no attorney's fee or cost provision in conflict with the state statute, and attorney's fees under Article 971(B) are a feature of Louisiana substantive law, which allows for their recovery only if an applicable statute or contract authorizes them. *See*, *Sher v. Lafayette Ins. Co.*, 988 So.2d 186, 201 (La. 2008). Article 971(B) is the Louisiana statutory authorization for their recovery in this case.

In summary, all the facts material to Loyola's motion are indisputable and only require this Court's decision as a matter of Louisiana law, consistent with Article 971 and Rule 56. Based on the abundance of undisputed evidence before the Court, Sahs cannot support any of his claims, which must be dismissed according to the Louisiana anti-SLAPP statute's applicable provisions.

Respectfully submitted,

/s/ *Charles D. Marshall, III*
Julie D. Livaudais (La. Bar No. 1183)
Charles D. Marshall, III (La. Bar No. 27564)
Rosalie M. Haug (La. Bar. No. 37720)
CHAFFE McCALL, L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163-2300
504-585-7000 (Telephone)
504-544-6054 (Facsimile)
Email: livaudais@chaffe.com
　　　　marshall@chaffe.com
　　　　haug@chaffe.com

***Attorneys for Defendant,***
***Loyola University of New Orleans***

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of March, 2025, a copy of the foregoing pleading will be served upon Plaintiff's counsel via the Court's electronic filing submission.

/s/ *Charles D. Marshall, III*