UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
LOUISIANA

| | | |
|---|---|---|
| LUKE G. SAHS | * | CIVIL ACTION NO. 2:24-cv-01379 |
| | * | |
| VERSUS | * | SECTION: E (3) |
| | * | |
| LOYOLA UNIVERSITY | * | JUDGE SUSIE MORGAN |
| NEW ORLEANS | * | |
| | * | MAG. JUDGE EVA J. DOSSIER |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>PLAINTIFF'S MEMORANDUM PURSUANT TO THE MARCH 17, 2025 COURT ORDER</u>

Now comes Plaintiff, Luke G. Sahs, ("Sahs") by and through undersigned counsel, and hereby responds to the Court's March 17, 2025 Order (Doc. 58) and Defendant Loyola University New Orleans' ("Loyola") Supplemental Brief, addressing the applicability of Louisiana Code of Civil Procedure Article 971 ("Article 971") with a specific focus on *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393 (2010) and *Klocke v. Watson,* 936 F.3d 240 (5th Cir. 2019), as well as the dissenting opinion in *Cuba v. Pylant*, 814 F.3d 701 (5th Cir. 2016).

1

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbas v. Foreign Policy Grp., LLC,* 783 F.3d 1328 (D.C. Cir. 2015) ............................... passim
*Adickes v. S. H. Kress & Co.,* 398 U. S. 144 (1970)...................................................... 12
*All Plaintiffs v. All Defendants,* 645 F.3d 329 (5th Cir. 2011) .................................. 8, 16
*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)........................... 11
*Baxter v. Scott,* 847 So.2d 225 (La.App. 2d Cir.) ........................................................ 23
*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ............ 4, 11
*Block v. Tanenhaus,* 815 F.3d 218 (5th Cir. 2016) ...................................................... 18
*Block v. Tanenhaus,* 867 F.3d 585 (5th Cir. 2017) ................................................... 6, 19
*Brosseau v. Haugen,* 543 U.S. 194 (2004) ............................................................... 12
*Burlington N. R.R. Co. v. Woods ,* 480 U.S. 1, 107 S. Ct. 967, 94 L.Ed.2d 1 (1987) ................ 17
*Carbone,* 910 F.3d 1345 (11th Cir. 2018) ............................................................ 17, 24
*Carr v. Abel,* 64 So.3d 292 (La. App. 5 Cir. March 29, 2011)....................................... 7
*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .................... 13
*CoreCivic, Inc. v. Candide Grp., LLC,* 46 F.4th 1136 (9th Cir. 2022).......................... 5, 26
*Cuba v. Pylant,* 814 F.3d 701 (5th Cir. 2016).................................................... 1, 10, 16
*Darden v. Smith,* 879 So.2d 390 (La.App. 3d Cir.) ....................................................... 22
*Davis v. Fort Bend Cnty.,* 765 F.3d 480 (5th Cir.2014) .............................................. 13
*Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ............... 3, 5, 8, 10
*Estiverne v. Times Picayune, L.L.C.,* 06-0571(La. App. 4 Cir. 12/20/06), 950 So. 2d 858, 860). 23
*Garo Alexanian v. Jason Brown et al* 2009 WL 2356443 (W.D. La. 2009) ............................. 23
*Gines v. D.R. Horton, Inc.,* 699 F.3d 812 (5th Cir.2012) ........................................... 12
*Godin v. Schencks,* 629 F.3d 79 (1st Cir. 2010) .............................................. 5, 13, 25
*Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) ................................. 8
*Henry v. Lake Charles Am. Press, L.L.C.,* 566 F.3d 164 (5th Cir. 2009)........................ passim
*In re Lipsky,* 460 S.W.3d 579 (Tex.2015)........................................................... 10
*Int'lShortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, (5th Cir. 1991)............................. 14
*Jones v. Borden Co.* 430 F.2d 568 (5th Cir.1970) .................................................... 14
*Klocke v. Watson,* 936 F.3d 240 (5th Cir. 2019)................................................... passim
*La Liberte v. Reid,* 966 F.3d 79 (2d Cir. 2020)................................................... 24, 26
*Leal v. McHugh,* 731 F.3d 405 (5th Cir.2013) ........................................................ 11
*Lee v. Pennington,* 830 So. 2d 1037 (La. Ct. App. 2002)........................................... 7, 9
*Lexington Ins. Co. v. S.H.R.M. Catering Servs., Inc.,* 567 F.3d 182 (5th Cir.2009) ............... 11
*Los Lobos Renewable Power, LLC v. Americulture, Inc,* 885 F.3d 659 (10th Cir. 2018).............. 3
*Lozovyy v. Kurtz,* No. 3:13–CV–00424, 2015 WL 331804 (M.D.La. Jan. 26, 2015). 13, 18, 19, 23
*Makaeff v. Trump Univ.,* LLC, 715 F.3d 254, 273 (9th Cir. 2013)............................. 3, 17, 27
*Makaeff v. Trump Univ., LLC,* 736 F.3d 1180, (9th Cir. 2013)................................... 4, 25
*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,* 890 F.3d 828 (9th Cir. 2018) 5
*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,* 890 F.3d 828 (9th Cir.). 14, 26
*Ronald McIntyre v. David Gilmore et al* 2015 WL 2250210 (E.D. La.2015) ............................. 23
*Ross v. Dejarnetti* Civil Action 18-11277 (E.D. La. Jul. 30, 2021)................................... 14
*Ross v. John's Bargain Stores Corp.,* 464 F.2d 111 (5th Cir.1972)................................... 14
*Russ v. International Paper Co.,* 943 F.2d 589 (5th Cir.1991)....................................... 12
*Sassone v. Elder,* 626 So.2d 345 (La. 1993) ........................................................ 23
*Saucier v. Washington,* 229 So.3d 19 (La. App. 3 Cir. 9/20/17) ..................................... 23

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393 (2010) ............... passim

*Sibbach v. Wilson & Co.*, 312 U.S. 1, 61 S. Ct. 422, 85 L. Ed. 479 (1941) ........................... 15, 16

**Statutes**

Article 971 ..................................................................................................................... passim

Cal. Civ. Proc. Code § 425.16 ............................................................................................ 24

D.C. Code § 16–5502 ........................................................................................................... 7

Louisiana Code of Civil Procedure Article 971 ................................................................... 1

TCPA § 27.003 ..................................................................................................................... 7

Tex. Civ. Prac. & Rem. Code § 27.003 ......................................................................... 3, 19

I.        **Summary of Argument**

This Court should find, in accordance with *Shady Grove*, *Klocke*, the dissenting opinion in *Cuba*, that Article 971, Louisiana's anti-SLAPP law, does not apply in federal court because (1) it is procedural in nature and, thus, may not be applied under a standard *Erie* analysis,[1] and (2) Article 971 collides and conflicts with Federal Rules 12 and 56, rendering it inapplicable pursuant to *Shady Grove* and its progeny.

Article 971 of the Louisiana *Code of Civil Procedure* is – on its face – a procedural rule. Article 971, like the "materially similar" Tex. Civ. Prac. & Rem. Code § 27.003 et seq. ("TCPA"),[2] sets forth a procedural mechanism, which can only be used within the context of an existing lawsuit and that only vindicates *existing* substantive rights. See *Klocke* at 247 quoting *Makaeff v. Trump Univ.*, LLC, 715 F.3d 254, 273 (9th Cir. 2013) (Kozinski, C.J., concurring) (describing procedural nature of California's anti-SLAPP statute). Like the TCPA and other anti-SLAPP statutes, Article 971 is clearly "a procedural mechanism for speedy dismissal of a meritless lawsuit that infringes on certain constitutional protections," not a law that creates new substantive defenses. *See Cuba*, 814 F.3d at 719 (Graves, J., dissenting); *Los Lobos Renewable Power, LLC v. Americulture, Inc*, 885 F.3d 659, 668–69 (10th Cir. 2018) (citing dissent from *Cuba* (dissent) and analyzing the procedural nature of New Mexico's anti-SLAPP statute). Accordingly, Article 971 it should not be applied in federal court pursuant to the dictates of *Erie* and its progeny.

Moreover, Article 971 – whether procedural or (for argument's sake) substantive – cannot be applied in federal courts because Federal Rules 12 and 56 "answer the same question" as Article

---

[1] *Cuba v. Pylant*, 814 F.3d at 719 (5th Cir. 2016) (Graves, J., dissenting); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

[2] *Cuba*, 914 F.3d at 706, fn. 6 (describing Texas' anti-SLAPP statute (the "TCPA") as "materially similar" to Article 971).

971 and the state and federal rules are in conflict. See *Klocke*, 936 F.3d at 245. "Each [Article 971 and the Federal Rules] specifies requirements for a case to proceed at the same stage of ligation," and, as Article 971 imposes additional procedural requirements not found in the Federal Rules, a conflict is created and the federal rules must be applied. *Id.* Under Article 971, plaintiffs face dismissal of their claims at the pleading stage unless they affirmatively demonstrate, through evidence, that they have a "probability of success" as to their claims. Thus, Article 971 imposes a is greater burden than Federal Rule 12(b)(6) does, which is that plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Similarly, Article 971 conflicts with the Federal Rule 56 in that the standard to be applied under Article 971 requires the plaintiff to affirmatively produce evidence demonstrating the "probability of success" (1) without the benefit of discovery and (2) without first requiring the defendant to meet the Rule 56 burden of showing the absence of any disputed issues of material fact and, that as a matter of law, they are entitled to judgment. See Art. 971A to 971D (provisions regarding stay of discovery and the defendant's lack of burden akin to Federal Rule 56). *See also Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1189 (9th Cir. 2013)(Watford, J. dissenting) (analyzing California's anti-SLAPP statute in light of *Shady Grove* and stating "the anti-SLAPP statute eviscerates Rule 56 by requiring the plaintiff to prove that she will probably prevail if the case proceeds to trial—a showing considerably more stringent than identifying material factual disputes that a jury could reasonably resolve in the plaintiff's favor.")

Significantly, anti-SLAPP statutes that frame the plaintiff's burden as requiring an evidentiary showing on the "likelihood" or "probability" of success – or another burden exceeding

the requirements of Rules 12 or 56 – have largely, since *Shady Grove*, been found inapplicable.[3] *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1144 (9th Cir. 2022), one of the outlier opinions, is not persuasive for purposes of this court's analysis. *CoreCivic* reflects that, through its prior decision in *Planned Parenthood*, 890 F.3d 828, the Ninth Circuit essentially rewrote California's anti-SLAPP statute (Cal. Code of Civil Procedure § 425.16(b)), in order to replace the "probability of prevailing" standard with the standards applicable on a motion to dismiss, pursuant to 12(b)(6), or for summary judgment, under rule 56, depending upon the nature of the motion. *See* id. at 1143 citing *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833-835 (9th Cir. 2018). Further, as reflected in the 2018 *Planned Parenthood* decision, a Ninth Circuit plaintiff facing a "motion to strike" based upon factual insufficiency of the claims *must* be allowed to conduct discovery and have opportunities to supplement evidence based upon factual challenges – a finding that functionally nullifies any automatic stay of discovery provision. Likewise, the rationale provided in *Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010), for refusing to find a conflict between Maine's anti-SLAPP statute and Federal Rules 12(b)(6) and 56 has been rejected by the Fifth Circuit. *See Klocke*, 936 F.3d at 246.

"The applicability of state anti-SLAPP statutes in federal court is an important and unresolved issue in this circuit." *Block v. Tanenhaus*, 867 F.3d 585, 589, fn. 2 (5th Cir. 2017). Pursuant to the

---

[3] *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015) (relying on *Shady Grove* to find that D.C. Code § 16-5502, which imposed burden of demonstrating "likelihood of success" on merits of plaintiff's challenged claim does not apply in federal courts); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1356 (11th Cir. 2018) (finding Georgia's anti-SLAPP law, which employs a "probability" of success on the merits standard, was inapplicable pursuant to *Shady Grove*); *La Liberte v. Reid*, 966 F.3d 79, 85–86 (2d Cir. 2020) (refusing to apply California's anti-SLAPP statute - Cal. Civ. Pro. Code § 425.16(b)(3) – as it requires the plaintiff "establish a probability that he or she will prevail on the claim" pursuant to *Shady Grove*); *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1048 (N.D. Ill. 2013), aff'd, 791 F.3d 729 (7th Cir. 2015) (finding Illinois anti-SLAPP law, which requires "Section 525 conflicts with Rule 12(d) and Rule 56 by restricting a plaintiff's 'procedural right to maintain [an action]' established by the federal rules and therefore cannot be applied by a federal court sitting in diversity.") *See also Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1188 (9th Cir. 2013) (Watford, J., dissenting from denial of rehearing en banc) (disagreeing with majority decisions regarding California's anti-SLAPP statute and stating "[v]iewed through Shady Grove's lens, California's anti-SLAPP statute conflicts with Federal Rules 12 and 56.")

authority in *Shady Grove* and *Klocke*, as well as the persuasive authority of Judge Graves dissent in *Cuba*, this Court should find that Article 971 – like the TCPA - does not and cannot apply in federal courts, including this case for the reasons set forth more fully below.

I.    **Louisiana Code of Civil Procedure Article 971 Does Not Apply in Federal Court**

    **A.** Louisiana Code of Civil Procedure Article 971

In order to determine whether La. Code of Civ. P. art. 971 ("Article 971") should be applied in federal courts, the statute itself requires examination. Article 971 reads in pertinent part as follows:

> A.(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a **probability of success** on the claim.
>
> (2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
>
> […]
>
> C. (1) The special motion may be filed within ninety days of service of the petition, or in the court's discretion, at any later time upon terms the court deems proper.
>
> […]
>
> D. All discovery proceedings in the action **shall** be stayed upon the filing of a notice of motion made pursuant to this Article. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. Notwithstanding the provisions of this Paragraph, the court, on noticed motion and for good cause shown, may order that specified discovery be conducted.

(Emphasis added.) Article 971 is described as "a **procedural device** to be used early in legal proceedings to screen meritless claims" arising from speech. (Emphasis added.) *Lee v. Pennington,*

830 So. 2d 1037, 1041 (La. Ct. App. 2002), *writ denied*, 836 So.2d 52 (La. 2003). This procedural status is emphasized by its placement in the Louisiana Code of Civil Procedure, not for example, the Civil Code, which enumerates statutory claims and defenses.

Article 971, like most anti-SLAPP statutes, employs as a two-part, burden-shifting framework to effectuate the dismissal of a case on its merits through a "motion to strike." See Art. 971A(1). Like other statutes, when the defendant files a motion to strike pursuant to Article 971, they must make a prima facie showing that the claims asserted against them arise from an act in furtherance of the exercise of their right of petition for free speech under the Louisiana or United States Constitution in connection with a public issue. See *Carr v. Abel,* 64 So.3d 292, 297 (La. App. 5 Cir. March 29, 2011); Article 971A(1) *compare with* TCPA, § 27.005; D.C. Code § 16–5502(b). Significantly, upon the filing of a motion to strike, the court must stay discovery in the proceedings; the stay is automatic, and it is only through proactively moving the court to be permitted to conduct discovery and showing "good cause" for doing so that discovery may be permitted. Article 971D *compare with* TCPA § 27.003(c) &27.006(b) (staying discovery automatically but permitting court to allow specified and limited discovery if motion made for same); D.C. Code § 16–5502 (c) (automatic stay of discovery that can be lifted under certain circumstances).

Under Article 971 if the defendant meets his prima facie burden in the first step of the "test," the burden shifts to the plaintiff to establish the "probability of success" on the merits of the contested claim(s). Art. 971A (1). The defendant's burden is, on its face, not inclusive of any requirement akin to Federal Rule 56. (*Id.*) The "probability of success" standard – like those used in other anti-SLAPP statutes – is undefined by statute, vague, and fails to mirror the language of common procedural standards (e.g. under Rule 12(b)(6) or Rule 56 motion). Instead, it imposes a

burden couched in the language of "probability" or "likelihood."[4] The "probability of success" standard includes an evidentiary component not present in mechanisms under Federal Rules at the motion to dismiss stage or at summary judgment in that the "probability" determination should consider supporting and opposing affidavits stating the facts upon which the liability is based. Art. 971A(2). If the plaintiff is found not to meet their burden, their claims will be dismissed with prejudice and attorney's fees and costs must be awarded to the defendant. Art. 971(B).

### B. _Shady Grove_ & _Erie_ Analysis to Determine if Article 971 is Applicable in Federal Court

"The _Erie_ line of authorities holds that substantive state law must be applied in federal courts in diversity cases, but state procedural law yields to the applicable Federal Rules." _Klocke,_ 936 F.3d 240, 245 citing _Hanna v. Plumer,_ 380 U.S. 460, 465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). See _Erie R.R. Co. v. Tompkins,_ 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (standing for the proposition that federal courts exercising diversity jurisdiction apply state substantive law rather than federal common law). When performing an _Erie_ analysis, a multi-step inquiry is applied by the Court. _Hanna_, 380 U.S. at 461–62.

The first step is to determine whether the statute at issue is procedural or substantive. State procedural statutes may <u>not</u> be applied in federal courts. _Erie,_ 304 U.S. at 78. State substantive rules must be applied, but before doing so, the Court moves to the second step to decide whether the state substantive law conflicts with federal procedural rules; if so, then the federal rule applies. _All Plaintiffs v. All Defendants,_ 645 F.3d 329, 333 (5th Cir. 2011).

The panel in _Klocke_ specifically stated:

> "[a] federal court exercising diversity jurisdiction should not apply a state law or rule if (1) a Federal Rule of Civil Procedure 'answer[s] the

[4] See Article 971 compare with D.C. Code § 16–5502 (b) (plaintiff's burden on second step is demonstrating "claim _likely to succeed on the merits_."); O.C.G.A. § 9-11-11.1(b)(1) (plaintiff must demonstrate "_probability_ that [they] will prevail on the claim"); TCPA § 27.003

same question' as the state law or rule and (2) the Federal Rule does not violate the Rules Enabling Act." *Abbas v. Foreign Policy Grp., LLC,* 783 F.3d 1328, 1333 (D.C. Cir. 2015) (Kavanaugh, J.) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 398–99, 130 S. Ct. 1431, 1437, 176 L.Ed.2d 311 (2010) (majority op.)). Courts do not "wade into *Erie's* murky waters unless the federal rule is inapplicable or invalid." *Shady Grove,* 559 U.S. at 398, 130 S. Ct. at 1437.

*Klocke,* 936 F.3d at 244-245. Courts tackling the question of whether an anti-SLAPP statute should be applied in federal courts have, like the Fifth District in *Klocke,* been turning to the analysis set forth in *Shady Grove* to revisit prior decisions light of the clarity and framework it provides. The Fifth District has not, to date, analyzed the applicability of Article 971 in federal courts in light of *Shady Grove,* nor has it *analyzed* whether Article 971 is procedural or substantive under *Erie.* See . *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 181 (5th Cir. 2009) (assuming without analysis that Article 971 is only "nominally" procedural based upon California decisions and a factually dissimilar case concerning UM coverage disputes).

C. <u>Article 971 is a Procedural Article</u>

The first step in an *Erie* analysis is to determine whether Article 971 is procedural or substantive. Louisiana Code of Civil Procedure Article 971 is, obviously, codified in the *Louisiana Code of Civil Procedure,* thus substantiating that Article 971 is indeed a procedural article rather than a substantive law. See *Lee* 830 So. 2d at 1041 ("Article 971 was enacted by the legislature as a *procedural device* to be used early in legal proceedings to screen meritless claims.")

Moreover, when analyzing what Article 971 functionally accomplishes, its procedural nature is further clarified. Article 971 (1) provides for a pre-trial motion to dismiss claims which are subject to its coverage, (2) establishes a time limit when the motion may be filed (i.e., a "special motion may be filed within ninety days of service of the petition"), (3) establishes a time limit for consideration of such motions to dismiss (i.e., a "motion shall be noticed for hearing not more than

10

thirty days after service"), (4) stays all discovery proceedings in the action upon the filing of a notice of motion made pursuant to this Article, and (5) authorizes the award of attorneys' fees if a claim is dismissed (i.e., "a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs"). Article 971 creates no substantive rule of Louisiana law. Thus, Article 971 is **not** applicable in federal court, or in the present case.

Plaintiff's position is supported by the Fifth Circuit's decision in *Klocke v. Watson*. There, the Fifth Circuit clearly stated that the panel "agrees with Judge Graves's conclusion" in his dissent in *Cuba*,[5] wherein Judge Graves concludes:

> Applying an *Erie* analysis, I conclude that the TCPA is procedural and must be ignored. The TCPA is codified in the Texas Civil Practice and Remedies Code, [1] provides for a pre-trial motion to dismiss claims subject to its coverage, [2] establishes time limits for consideration of such motions to dismiss, [3] grants a right to appeal a denial of the motion, and [4] authorizes the award of attorneys' fees if a claim is dismissed. This creates no substantive rule of Texas law; rather, the TCPA is clearly a procedural mechanism for speedy dismissal of a meritless lawsuit that infringes on certain constitutional protections. *See, e.g., Abbas*, 783 F.3d at 1333. Because the TCPA is procedural, I would follow *Erie's* command and apply the federal rules.

*Cuba v. Pylant*, 814 F.3d 701, 719 (5th Cir. 2016). This decision, which identifies the basis for classifying a statute in the Fifth Circuit as procedural versus substantive post-dates *Henry*, 566 F.3d 164 (2009), and provides a valid basis to conclude Article 971 – like the TCPA – is procedural.

---

[5] Judge Graves states in his dissent in *Cuba v. Pylant*, 814 F.3d 701 (5th Cir. 2016) that to survive a TCPA motion to dismiss, plaintiffs must provide "clear and specific evidence" for each element of a prima facie case. Finding no precise definition for "clear and specific evidence," he resorted to the Texas Supreme Court in the case *In re Lipsky* which made clear that "clear and specific evidence" lies somewhere between Texas's pleading standard and the evidentiary standard necessary to prevail at trial. Cuba, 814 F.3d at 719 citing *In re Lipsky*, 460 S.W.3d 579, 591 (Tex.2015). The "clear and specific evidence" is an evidentiary standard that has a lower burden of proof than the "standard necessary to prevail at trial," which is the burden pursuant to Article 971. Judge Graves found that the requirement of "clear and specific evidence" conflicted with FRCP 12 and 56 by exceeding the evidence requirements for a normal motion to dismiss pursuant to FRCP 12 and 56. Judge Graves also said in his dissent that TCPA is procedural and must not be applied in a Federal Court exercising jurisdiction under a diversity of citizenship. *Cuba*, 814 F.3d at 719-720. The Fifth Circuit in *Klocke v. Watson* agreed with Judge Graves dissent in Cuba and adopted his dissent. *Klocke*, 936 F.3d at 244 ("And we generally agree with Judge Graves's conclusion.")

Indeed, Article 971 creates no substantive rights; it merely provides a procedural mechanism for vindicating existing rights. The language of Article 971 is clearly, absolutely procedural. Sahs respectfully submits that the Fifth Circuit, based on the panel's statement in *Klocke,* where the panel "agrees with Judge Graves's conclusion" in his dissent in *Cuba*, would find that Article 971 is a procedural statute that should <u>not</u> be applied in federal courts under the *Erie* doctrine.

**D.  <u>Article 971 Collides and Conflicts with Federal Rules 12 & 56</u>**

Pursuant to the authority in *Shady Grove*, as well as the interpretation of the same in *Klocke,* there is a clear conflict and collision between Article 971 and the Federal Rules. Under Rule 12(b)(6), a federal court may dismiss a case for failure to state a claim if, accepting all well-pleaded factual allegations in a complaint as true, the complaint does not state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678– 79, 129 S. Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009). To overcome a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a claim that is plausible on its face. *Lexington Ins. Co. v. S.H.R.M. Catering Servs., Inc.,* 567 F.3d 182, 184 (5th Cir.2009). This is not an insuperable pleading barrier, and it ***requires no evidentiary support***, particularly since "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is *improbable,* and that a recovery is very *remote  and unlikely.*" (Emphasis added.) *Leal v. McHugh,* 731 F.3d 405, 413 (5th Cir.2013) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

This is a clear conflict with Article 971's requirement that "the court determines [if] the plaintiff has established a probability of success on the claim." In *Henry*, the Fifth Circuit unambiguously states that the burden is in excess of what is mandated under Rule 12. *Henry.*, 566 F.3d 164, 181 (stating probability of success standards " requires more than that which is necessary to survive a normal motion to dismiss"). Additionally, when applying Federal Rule 12, courts need

not determine if the evidence supports a rational inference that the allegations are true. Instead, courts must accept all well- pleaded facts as true and view them in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.,* 699 F.3d 812, 816 (5th Cir.2012).

Also, Federal Rule 12 answers the same question as the Article 971's special motion to dismiss provision: "what are the circumstances under which a court must dismiss a case before trial?" See *Klocke*, 936 F. 3d at 245 citing *Abbas*, 783 F.3d at 1333–34. Furthermore, Federal Rule 12 and Article 971 conflict because, unlike Federal Rule 12, Article 971 requires the plaintiff to establish "a probability of success on the claim" which imposes additional requirements beyond those found in Federal Rule 12. *Id.* at 1334.

The same conflict or issue exists with regard to Federal Rule 56 and Article 971. Federal Rule of Civil Procedure 56 states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] Fed.R.Civ.P. 56(a). The party opposing summary judgment succeeds by showing that a material fact issue exists and requires trial by a factfinder, which is the jury in the instant case before this Court. In ruling on a summary judgment motion, "the judge's function is not himself to weigh the evidence and determine the truth of the matter [asserted] but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106

---

[6] Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." However, even when the non-movant bears the burden of proof at trial, "[s]imply filing a summary judgment motion does **not** immediately compel the party opposing the motion to come forward with evidence demonstrating **material issues of fact as to every element of its case**." (emphasis added) *Russ v. International Paper Co.*, 943 F.2d 589, 591 (5th Cir.1991). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Adickes v. S. H. Kress & Co.*, 398 U. S. 144, 158-159 (1970). Courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. *Tolan v. Cotton*, 572 U.S. 650 (2014) (*per curiam*); *citing Brosseau v. Haugen*, 543 U.S. 194, 195, n.2 (2004) (*per curiam*).

S. Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Article 971's burden-shifting framework imposes additional requirements and burdens on a plaintiff, which extend well beyond those found in Federal Rule 56, as well as those found in Federal Rule 12, and diminishes the burden for defendants to seek the requisite relief.

First, Article 971 requires a defendant to make **absolutely no evidentiary showing of any kind** to shift the burden of proof to the plaintiff; rather, all the defendant must show is the cause of action arises "from an act of that [defendant] in furtherance of the [defendant's] right of petition or free speech . . . in connection with a public issue[.]" See La. Code Civ. Pro. Art. 971A(1); *Henry*, 566 F.3d at 181; *Starr v. Boudreaux*, 978 So. 2d 384, 388-89 (La. App. 1 Cir. 2007). Federal Rule 56, however, places the initial burden on the moving party and then shifts the burden to the nonmoving party to show that there is a dispute that merits trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)*; Davis v. Fort Bend Cnty*., 765 F.3d 480, 484 (5th Cir.2014).

Under both Louisiana and federal summary judgment procedures, the defendant's initial burden for a summary judgement is far more substantial, requiring an evidentiary showing of a lack of *prima facie* proof for at least one element of the plaintiff's claim. See La. Code Civ. Pro. Art. 966 & 967; and Fed. R. Civ. Pro. 56. Article 971 completely relieves defendants of their initial burden on motion for summary judgment, which is clearly a "distinct purpose" for enactment of Article 971.[7] Summary judgment motions are also normally resolved after the discovery process has concluded or sufficiently progressed.

Second, all discovery is immediately stayed "upon the filing of a notice of motion made

---

[7] In *Lozovyy v. Kurtz,* the district court, after examining the intent of the Louisiana legislature in enacting Article 971, stated: "there must be a distinct purpose for an article 971 Motion to Strike; otherwise there would be no point in enacting the statute because the Legislature could have merely relied on the summary judgment article itself." *Lozovyy v. Kurtz,* No. 3:13–CV–00424, 2015 WL 331804, at *12 (M.D.La. Jan. 26, 2015).

pursuant to [article 971]" (La. Code Civ. Pro. Art. 971(D)) and the court makes its determination considering only "the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (La. Code Civ. Pro. Art. 971(A)(2)) This stay can be removed for "good cause" on "noticed motion," but requires the plaintiff to make such a motion and the decision of whether or not to grant the same is within the discretion of the court. [8]

The plaintiff pursuant to Article 971 must submit a *prima facie* showing of facts sufficient to sustain a favorable judgment, which requires **more than** that which is necessary to survive a normal motion to dismiss pursuant to Federal Rule 56. Article 971 forces a plaintiff to, in essence, submit affidavits stating ***all*** the facts upon which the defendant's liability is based, a task much more onerous and greater than for a summary procedure which requires only addressing whether there are any issues of facts in dispute and not having to detail all the facts upon which defendant's liability is based. [9] In the present case before this Court, the Amended Complaint [Doc. 33] reflects that there are indeed issues of fact in dispute before the Court. [10]

---

[8] Significantly, the Ninth Circuit has recognized the problematic nature of a discovery stay and/or filing of, in essence, a motion for summary judgment prior to conducting ay discovery whatsoever: "[r]equiring a presentation of evidence without accompanying discovery would improperly transform the motion to strike under the anti-SLAPP law into a motion for summary judgment without providing any of the procedural safeguards that have been firmly established by the Federal Rules of Civil Procedure. That result would effectively allow the state anti-SLAPP rules to usurp the federal rules. We could not properly allow such a result." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,* 890 F.3d 828, 833–34 (9th Cir.), amended, 897 F.3d 1224 (9th Cir. 2018) (holding that to the extent that an anti-SLAPP motion challenges the factual sufficiency of a claim then a Rule 56 standard is applicable and discovery must be allowed.)

[9] "Generally, summary judgment is disfavored when <u>issues of intent or state of mind</u> are involved because those determinations are inherently a question of fact which turns on credibility." *Ross v. Dejarnetti* Civil Action 18-11277 (E.D. La. Jul. 30, 2021) citing as n. 13 *Int'lShortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1265-66 (5th Cir. 1991) ("When state of mind is an essential element of the nonmoving party's claim, it is less fashionable to grant summary judgment because a party's state of mind is inherently a question of fact which turns on credibility."). Credibility determinations, of course, are within the province of the fact-finder. Accordingly, courts have emphasized repeatedly that cases which turn on the moving party's state of mind are not well-suited for summary judgment. *Ross v. John's Bargain Stores Corp.,* 464 F.2d 111, 115 (5th Cir.1972); *Jones v. Borden Co.* 430 F.2d 568, 574 (5th Cir.1970) This is because it is particularly difficult for the nonmoving party to challenge the "self-serving testimony" of the moving party without the benefit of trial accessories, namely cross-examination. *See 60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432 (6th Cir.1987) Only through *live* cross-examination can the fact-finder observe the demeanor of a witness, and assess his credibility.

[10] The issues of facts of record include *inter alia*: (a) whether NOPD Officer Coleman, or any other NOPD police

Lastly, as stated above, Rule 56 answers the same question as the Article 971's special motion to dismiss provision: "what are the circumstances under which a court must dismiss a case before trial?" See *Klocke*, 936 F. 3d at 245 citing *Abbas*, 783 F.3d at 1333–34.

Therefore, Article 971 is not applicable in federal court because it indubitably requires the non-movant plaintiff to meet a much higher burden of proof than that imposed by Federal Rule of Civil Procedure 56, as well as by Federal Rule 12. Article 971 should also not be applied by this federal court since it "directly collides" with Federal Rule of Civil Procedure 56. *See, e.g., Abbas*, 783 F.3d 1328, 1337 (citing *Shady Grove*, 559 U.S. at 398–99; *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14, 61 S. Ct. 422, 426, 85 L. Ed. 479 (1941)).

## E. Article 971 as a Louisiana Substantive Law Would Conflict with the Federal Rules of Civil Procedure

If Article 971 is assumed not to be procedural as codified in the Louisiana Code of Civil Procedure, then the second step to be conducted is to determine if Article 971, as a Louisiana substantive law, conflicts with the Federal Rules of Civil Procedure. *Cuba v. Pylant*, 814 F.3d at 719-720. A federal court exercising diversity jurisdiction should not apply a state law or rule if (1) a Federal Rule of Civil Procedure 'answer[s] the same question' as the state law or rule and (2) the Federal Rule does not violate the Rules Enabling Act." *Klocke*, 936 F. 3d at 244-245 citing *Abbas v. Foreign Policy Grp., LLC,* 783 F.3d 1328, 1333 (D.C. Cir. 2015) (Kavanaugh, J.) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 398–99, 130 S. Ct.

---

officer, told Sgt Bell that Sahs was in possession of chemicals materials that can be used to kill people. (b) whether NOPD Officer Coleman, or any other NOPD police officer, told Sgt Bell that they believe Sahs will be brought up on terroristic threat charges as well. (c) whether NOPD Officer Coleman, or any other NOPD police officer, told Sgt Bell that Sahs made social media posts regarding the student who completed the report, spreading personal information regarding her such as the individual's nationality and family. (d) whether the "Affidavit for Arrest Warrant" for Sahs was to initially remain "confidential" and not a public record in the evening of March 2, 2023 [Doc. 33 ¶ 36] (e) whether Sgt. Bell had statutory authority under La. Public Records Laws (La. R.S. 44.3(A)(1) (as opined in the Dec. 19, 2019, La. AG Opinion 19-0169) in the evening of March 2, 2023, and before Sahs's booking at 1:09 a.m. on March 3, 2023, to discuss Sahs's arrest with anyone at Loyola. [Doc. 33 ¶¶ 36-39]

1431, 1437, 176 L.Ed.2d 311 (2010) (majority op.)).

1.  ***Federal Rules 12 and 56 Answer the Same Question as Article 971***

In the instant case before this court, Rules 12 and 56 of the Federal Rules of Civil Procedure answer the same question as Article 971's special motion to dismiss provision: what are the circumstances under which a court must dismiss a case before trial? See *Klocke*, 936 F. 3d at 245 citing *Abbas*, 783 F.3d at 1333–34. Because Federal Rules 12 and 56 answer the same question as the Article 971's special motion to dismiss provision, Article 971 as a Louisiana substantive law conflicts with Federal Rules 12 and 56, and Article 971 would yield to the Federal Rules 12 and 56 and not be applied in the federal court as long as Rules 12 and 56 do not violate the  Rules Enabling Act. *Cuba v. Pylant*, 814 F.3d at 720. *All Plaintiffs v. All Defendants*, 645 F.3d 329, 333 (5th Cir.2011)

2.  ***Federal Rules 12 and 56 Do Not Violate the Rules Enabling Act***

The Supreme Court in *Shady Grove* stated that the Rules Enabling Act authorized the Supreme Court "to promulgate rules of procedure subject to its review, but with the limitation that those rules shall not abridge, enlarge or modify any substantive right." *Shady Grove,* 559 U.S. at 407, 130 S.Ct. 1431 (internal quotations and citations omitted). See also 28 U.S.C. §§ 2071-2077. To be valid, the Rules Enabling Act must regulate "'the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them.'" *Id.* quoting *Sibbach v. Wilson & Co.,* 312 U.S. 1, 14, 61 S.Ct. 422, 85 L.Ed. 479 (1941). *See also Cuba v. Pylant*, 814 F.3d at 720.

The Fifth Circuit specifically held in *Klocke*:

> "[T]here is really no doubt, whether Rules 12 and 56 are "a valid exercise of Congress's rulemaking authority" under the Rules Enabling Act. *All Plaintiffs v. All Defendants*, 645 F.3d 329, 333 (5th Cir. 2011) ; *see Burlington N. R.R. Co. v. Woods* , 480 U.S. 1, 5, 107 S. Ct. 967,

969–70, 94 L.Ed.2d 1 (1987). These federal rules represent such a valid exercise. "So far, the Supreme Court has rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act." *Abbas* , 783 F.3d at 1336. As *Sibbach* explains, "any federal rule that 'really regulates procedure' is valid under the Rules Enabling Act." *Id.* at 1337 (quoting *Sibbach v. Wilson & Co.* , 312 U.S. 1, 14, 61 S. Ct. 422, 426, 85 L.Ed. 479 (1941))."

*Klocke*, 936 F.3d at 248. Rules 12 and 56 "are valid under the Rules Enabling Act because they define the procedures for determining whether a claim is alleged in a sufficient manner in a complaint and whether there is a genuine dispute of material fact sufficient to warrant a trial." *Carbone*, 910 F.3d 1345, 1357 (11th Cir. 2018); *Klocke*, 936 F.3d at 248. Therefore, there is no doubt that Article 971 directly conflicts with the "integrated program of pre-trial ... [federal] procedures designed to ensure the just, speedy, and inexpensive determination of every action and proceeding," especially since a ruling on an Article 971 motion is subject to immediate appeal to the Fifth Circuit, which can further delay the underlying case. *Makaeff,* 715 F.3d 254, 274 (9th Cir.2013) (Kozinski, C.J. concurring) (internal quotations and citations omitted) See FRCP 1, and *Cuba*, 814 F.3d at 720.

### 3.  *Federal Rules 12 and 56, which Govern Dismissal and Summary Judgment Motions, are to be Applied in Federal Court Instead of Article 971 Pursuant to Klocke*

Prior to *Klocke v. Watson*, the Fifth Circuit never directly addressed the critical issue of whether, or to what extent, a state's anti-SLAPP statute applies in a diversity suit in federal court. Rather, the Fifth Circuit was provided a number of cases where the applicability of an anti-SLAPP statute was raised on appeal, but not properly before the court and, thus, not, in fact, decided. See *Henry*, 566 F.3d 164, 168–69 (applying Louisiana's anti-SLAPP statute, Article 971, without deciding whether it *should* apply);  *Lozovyy v. Kurz*, 813 F.3d 576 (5th Cir. 2015) (same); *Block v. Tanenhaus*, 815 F.3d 218, 221–22 (5th Cir. 2016) (same); and *Cuba v. Pylant,* 814 F.3d 701, 711

(5th Cir. 2016) (applying Texas's anti-SLAPP statute, the TCPA). Loyola in its Supplemental Brief on the Applicability of La. C.C.P. Art. 971 in Federal Court [Doc. 61] relies on the Fifth Circuit cases *Henry v. Lake Charles Am. Press, LLC.*, *Lozovyy v. Kurz,* and *Block v. Tanenhaus* in support of its proposition that Article 971 is applicable in federal court under the *Erie* doctrine. Defendant's argument is unpersuasive.

In *Henry*, the Fifth Circuit never considered nor discussed the issue of the "applicability" of Article 971 in Louisiana federal district courts, which is a question of whether Article 971 conflicts with or is in "direct collision" with the Federal Rules of Civil Procedure, particularly in light of *Shady Grove*. See *Klocke,* 936 F.3d at 248 ("In *Henry,* the court stated that 'Louisiana law, including the nominally- procedural Article 971, governs this diversity case.' [*Henry,* 566 F.3d at 168–69]. But the court did not discuss the potential conflict between the state law and federal rules, and *Henry* preceded the decision in *Shady Grove.*") Further, as observed by several other courts, *Henry* did not actually discuss or analyze whether Article 971 is substantive versus procedural.

In the 2015 *Lozovyy* appeal*,* the Fifth Circuit again refused to address the issue whether Article 971 conflicts with the Federal Rule 56 because *Lozovyy* never argued that Article 971 must comport with Rule 56 (or Rule 12) as a matter of the *Erie* doctrine, nor did the district court address the issue in its order. The panel in *Lozovyy* specifically stated:

> Lozovyy claims that the district court erred in granting Defendants' motion, because it explicitly premised its ruling on the view that Article 971 imposes a higher burden on the non- movant than at summary judgment. In the district court, however, Lozovyy never argued that Article 971 must comport with Rule 56 as a matter of the *Erie* doctrine, nor did the district court address the issue in its order. Rather, the court merely cited *Henry* in support of its authority to rule on the motion after noting that "neither party [had] raised the issue." **We accordingly decline to revisit *Henry's* pronouncement on this point or address its implications with respect to Article 971's**

> applicability in federal court under the Erie doctrine, because
> Lozovyy failed to "raise the issue to such a degree that the trial
> court [could] rule on it." *Mauze & Bagby*, 745 F.3d at 752–53. We
> instead "proceed assuming" the statute does not conflict with the
> Federal Rules. Id.

(Emphasis added) *Lozovyy*, 813 F.3d at 585.

Similarly, the plaintiff in *Block v. Tanenhaus*, as in *Lozovyy*, unfortunately waived his right

on appeal to have the Fifth Circuit decide whether Article 971 is applicable in federal court because

it is procedural and because, even if it is substantive, it is in direct collision with the Federal Rules

of Civil Procedure.  The panel in *Block*, which decided the case in 2016, specifically held:

> Block argues that Article 971 is not applicable in federal court because
> it is procedural and because, even if it is substantive, it is in direct
> collision with the Federal Rules of Civil Procedure. The applicability
> of state anti-SLAPP statutes in federal court is an important and
> unresolved issue in this circuit.
>
> **Unfortunately for Block, his arguments against application of
> Article 971 have been forfeited.** Each of them was either determined
> to be forfeited in his prior appeal or is now forfeited because he failed
> to raise them in his prior appeal. See *Block*,815 F.3d at 221 n.3 (holding
> that *Block* forfeited his arguments related to burden shifting, discovery,
> and attorney's fees);*Lindquist v. City of Pasadena*, 669 F.3d225,
> 239(5th Cir. 2012)(holding that "an issue that could have been but was
> not raised on appeal is forfeited" and may not be revisited on remand
> by the district court or in a subsequent appeal). Accordingly, as in the
> prior appeal of this case and as in *Lozovyy*, we assume without deciding
> that Article 971 applies. See *Block*, 815 F.3d at 221; *Lozovyy*, 813 F.3d
> at 582–83.

(Emphasis added) *Block*, 867 F.3d at 589.

In 2019, the Fifth Circuit was presented with the case *Klocke v. Watson* for directly

addressing "the critical issue . . . as whether, or to what extent, the Texas Citizens Participation

Act ('TCPA'), Tex. Civ. Prac. & Rem. Code §§ 27.001-.011, which is a type of anti-SLAPP

statute, applies in a diversity suit in federal court." *Klocke v. Watson*, 936 F.3d 240. In *Klocke*, the

Fifth Circuit analyzed the issue under the framework of *Abbas*, 783 F.3d 1328, 1332 (D.C. Cir.

2015), and *Shady Grove*, 559 U.S. 393, which hold that state rules conflict with federal procedural

rules when they impose additional procedural requirements not found in the federal rules.[11] The Fifth Circuit found that the TCPA and the Federal Rules "answer the same question" because each specifies requirements for a case to proceed at the same stage of litigation. *Klocke*, 936 F.3d at 245. Specifically, the Fifth Circuit further found that TCPA <u>exceeds</u> the pleading requirements of Federal Rules 8 and 12 as well as the evidentiary requirements of Federal Rule 56. Therefore, TCPA must yield to the Federal Rules and cannot be applied in Federal Court.

*Klocke v. Watson* relied heavily on *Abbas v. Foreign Policy Grp.*, 783 F.3d 1328, 1332, which addressed the question "whether a federal court exercising diversity jurisdiction may apply the D.C. Anti–SLAPP Act's special motion to dismiss provision."[12] The D. C. Circuit in *Abbas* cogently ruled flatly: "[t]he answer is no." *Id.* at 1333. The D.C. Circuit in *Abbas* relied on clear United States Supreme Court precedent from *Shady Grove* under which federal courts sitting in diversity cannot apply a state rule if "(1) a Federal Rule of Civil Procedure 'answer[s]' the same question' as the state law or rule and (2) the Federal Rule does not violate the Rules Enabling Act." *Id*. citing *Shady Grove.*, 559 U.S. at 398–99.

Furthermore, under the D.C. Anti–SLAPP Act statute at issue in *Abbas*, a party is required to show some version of "likelihood of success on the merits," a much higher standard than that required by the federal rules to survive dismissal and continue toward trial. The standard in

---

[11] In *Shady Grove*, where the New York statute included the additional provision "to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action," Article 971 imposes <u>additional</u> punitive requirements with attorney fees, stating that "a prevailing party on a special motion to strike ***shall*** be awarded reasonable attorney fees and costs." (emphasis added) **This punitive provision is absent in Federal Rules 12 and 56, thus providing an additional reason pursuant to *Shady Grove* as to why Article 971 is not to be applied in a federal court exercising jurisdiction under diversity.**

[12] Pertinent parts of the 2010 D.C. Anti-SLAPP Code (§ 16–5502) at issue in *Abbas* are (1) the applicability of the statute to claims claim "arising from an act in furtherance of the right of advocacy on issues of public interest" and mandating the motion be filed in 45 days from service, (2) the burden shifting framework, as is present in Article 971, placing a prima facie burden on defendant to demonstrate applicability and then shifting the burden to the plaintiff to demonstrate "the claim is likely to succeed on the merits," and (3) mandatory stay of discovery upon filing of the motion, which can only be lifted absent a specific showing. See *Abbas,*783 F.3d 1328, 1332 (D.C. Cir. 2015); D.C. Code § 16–5502(a)-(c).

*Abbas* conspicuously mimics the requirements in Article 971.

According to Judge Kavanaugh in his opinion in *Abbas*, this difference matters:

> Under the Federal Rules, a plaintiff is generally entitled to trial if he or she meets the Rules 12 and 56 standards to overcome a motion to dismiss or for summary judgment. But the D.C. Anti-SLAPP Act nullifies that entitlement in certain cases. Under the D.C. Anti-SLAPP Act, the plaintiff is *not* able to get to trial just by meeting those Rules 12 and 56 standards. The D.C. Anti-SLAPP Act, in other words, conflicts with the Federal Rules by setting up an additional hurdle a plaintiff must jump over to get to trial.

*Abbas* at 1334 (citing D.C. Code § 16-5504 (2001)). Based on Judge Kavanaugh's opinion in *Abbas*, it seems that no legitimate construction or interpretation of Rules 12 and 56 exists that will not create a direct conflict with the D.C. anti- SLAPP laws. This conclusion is consistent with the Supreme Court's decision in *Shady Grove*, where the Court concluded that a state statute that interfered with and conflicted with the mechanism for class actions under Federal Rule 23 had to give way to the Federal Rule.

The D.C. Circuit in *Abbas*, a case upon which the Fifth Circuit in *Klocke* relied heavily, held that Federal Rules 12 and 56 do in fact answer the same question as D.C. anti-SLAPP statutes, they do not violate the Rules Enabling Act, and "[t]hey do not require a plaintiff to show a likelihood of success on the merits." *Id*. at 1333-34 & 1336-37. Thus, the D.C. anti-SLAPP statute and its kin "conflict with the Federal Rules by setting up an additional hurdle a plaintiff must jump over to get to trial." *Id*. at 1334.

### 4. *Article 971 sets "up an additional hurdle a plaintiff must jump over to get to trial"*

In the instant case before this Court, Article 971 sets "up an additional hurdle a plaintiff must jump over to get to trial," a hurdle which is a very similar to the hurdle from the D.C. anti-SLAPP that directs a plaintiff to "jump over to get to trial." The D.C. anti-SLAPP provisions at

22

issue in *Abbas* required the plaintiff to show "a likelihood of success on the merits." D.C. Code § 16–5502(b) ("the motion [to strike] shall be granted unless the responding party demonstrates that the claim is likely to succeed on the merits"); *Abbas*, 783 F.3d at 1334.

Article 971A(1) similarly requires a plaintiff to establish "a probability of success on the claim." Art. 971A(1). "[A] probability of success" is a synonym for "a likelihood of success" thus they mean essentially the same thing and create a similar hurdle for a plaintiff to "jump over to get to trial. Because Article 971 conflicts with the Federal Rules 12 and 56 by requiring the plaintiff to establish "a probability of success on the claim," an additional impediment is encountered by the plaintiff which imposes requirements well beyond those found in Federal Rules 12 and 56, resulting in Article 971 not to be applied in federal court.

Sahs respectfully urges this Court, in keeping with *Klocke* which adopted the D.C. Circuit's well-reasoned opinion in *Abbas*, to hold that Article 971 cannot be applied in this diversity case. The standard for Article 971 is more heightened and should not be applied by a federal court.

5. ***The Legal Standard for Plaintiff to Establish a Probability of Success on a Claim Requires (1)More Evidence than that to survive a Motion to Dismiss under FRCP 12 and 56, and (2) Must be of Quality and Quantity to demonstrate that Plaintiff will be able to Meet his Burden of Proof at Trial.***

In *Henry v Lake Charles,* the Fifth Circuit provided the legal standard for the plaintiff to "demonstrate a probability of success on his or her own claim" pursuant to Article 971. *Henry*, 566 F.3d 164 citing *Darden v. Smith*, 879 So.2d 390, 396 (La.App. 3d Cir.), writ denied, 887 So.2d 480 (La. 2004). A plaintiff contesting an Article 971 motion must show a probability that she will be able to establish **all of the elements** of her claim. *Henry,* 566 F.3d at 170 citing *Baxter v. Scott*, 847 So.2d 225, 233 (La.App. 2d Cir.). "In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Article 971A(2); *see also Baxter*, 847 So.2d at 232. The Louisiana Supreme

23

Court in *Sassone v. Elder* stated, "a defamation plaintiff must produce evidence of sufficient quality and quantity to demonstrate that he will be able to meet his burden of proof at trial." *Sassone v. Elder*, 626 So.2d 345, 351 (La. 1993).

The Fifth Circuit in *Henry v Lake Charles*[13], most clearly stated:

> "To establish a probability of prevailing on his claim, a plaintiff must state and substantiate a legally sufficient claim. This is done through a **prima facie** showing of facts sufficient to sustain a favorable judgment." *Baxter*, 847 So.2d at 231-32. **This requires more than that which is necessary to survive a normal motion to dismiss, as "a defamation plaintiff must produce evidence of sufficient quality and quantity to demonstrate that he will be able to meet his burden of proof at trial."** (emphasis added) *Estiverne v. Times-Picayune, L.L.C.*, 950 So.2d 858, 860 (La.App. 4th Cir. 2006) (quotation marks omitted).

*Henry*, 566 F.3d at 181. See also *Ronald McIntyre v. David Gilmore et al* 2015 WL 2250210 at *3 (E.D. La.2015)(specifically quoting the identical verbiage as stated in *Henry*); *Garo Alexanian v. Jason Brown et al* 2009 WL 2356443 at *4 (W.D. La. 2009) (same); and *Saucier v. Washington*, 229 So.3d 19 at 12 (La. App. 3 Cir. 9/20/17) (same). While the Fifth Circuit attempted to clarify in *Lozovyy* that it did not *believe* that Louisiana Supreme Court would find that the "probability of success" standard permitted courts to "weigh evidence, assess credibility, or resolve disputed issues of material fact," it did acknowledge that cases from Louisiana's appellate courts suggested that determinations were made, in part, based upon the weighing of evidence or credibility determinations. *Lozovyy*, 813 F.3d 576, 584, n.6. There have, thus, been no binding decisions under Louisiana law setting the "probability of success" standard.

---

[13] Loyola represents and admits to the Court in its Memorandum in Support of Special Motion to Strike [Doc. 43-1, pages 16-17] that this heightened standard should be applied: "[a] plaintiff faced with an Article 971 motion to strike has a "difficult burden." *Henry*, 566 F.3d at 181 (citation omitted). It "**requires more than that which is necessary to survive a normal motion to dismiss**, as 'a defamation plaintiff must produce evidence of sufficient quality and quantity to demonstrate that he will be able to meet his burden of proof at trial.'" *Id.* (quoting *Estiverne v. Times Picayune, L.L.C.*, 06-0571(La. App. 4 Cir. 12/20/06), 950 So. 2d 858, 860). In deciding whether that burden has been met, the court "shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." La. C.C.P. art. 971(A)(2)." **(Emphasis added)** Doc. 43-1, pages 16-17.

**F. On its Face, the California anti-SLAPP "Probability" of Prevailing Standard Conflicts with the Federal Rules.**

In addition to the decisions in *Shady Grove* and *Klocke*, the dissent in *Cuba* and other persuasive decisions in sister circuits regarding similar anti-SLAPP statutes, the Second Circuit 2020 decision in *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020) warrants highlighting, particularly given Defendant's insistence that this Court should follow decisions based upon California's anti-SLAPP statute. In *La Liberte*, the Second Circuit, which was applying California law by agreement of the parties, held "that California's anti-SLAPP statute [Cal. Civ. Proc. Code § 425.16(b)(1)] is inapplicable in federal court because it increases a plaintiff's burden to overcome pretrial dismissal, and thus conflicts with Federal Rules of Civil Procedure 12 and 56." *Id.* at 83.

Significantly, California's anti-SLAPP statute, like Article 971, identifies the plaintiff's burden in terms of "probability" – i.e. the "probability that the plaintiff will prevail on the claim." Specifically, a "special motion to strike" pursuant to California's anti-SLAPP statute must be granted "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1) This burden is similar, if not nearly identical, to the burdens imposed through anti-SLAPP statutes in Georgia (as addressed in *Carbone*) and D.C. (as addressed in *Abbas*).

The *La Liberte* panel found that Federal Rules 12 and 56, in combination, "express 'with unmistakable clarity' that proof of probability of success on the merits 'is not required in federal courts' to avoid pretrial dismissal." *Id.* at 87 citing *Carbone*, 910 F.3d at 1351 (quoting *Hanna*, 380 U.S. 460, 470). Therefore, as California's special motion to strike pursuant to California's anti-SLAPP statute requires the plaintiff to make a showing that the Federal Rules 12 and 56 do not

require, it should not applied in federal courts.[14]

The court in *La Liberte* declined the defendant's request to adopt the rationale employed in other Ninth Circuit rulings relating to California's anti-SLAPP statute – i.e. that federal courts may apply § 425.16 because California's anti-SLAPP statute and the Federal Rules "can exist side by side ... without conflict." *Id.* citing *Newsham*, 190 F.3d at 972 (internal quotation marks omitted).[15]  The panel, acknowledging the existence of the prior decision, firmly indicated  "We disagree [that the federal rules and anti-SLAPP statute can exist without conflict]--as do a number of Ninth Circuit judges."[16] *La Liberte*, 966 F.3d  at  87, 94, n. 4.

Indeed, as set forth above, the Ninth Circuit has implicitly acknowledged that § 425.16, *as*

---

[14] Article 971 is very similar to the California's anti-SLAPP statute in that it also contains a "probability requirement" ---- the "probability of success on the claim."  A "special motion to strike" pursuant to Article 971 must be granted "unless the court determines that the plaintiff has established a probability of success on the claim." Article 971 would abrogate the entitlement pursuant to Federal Rule 12(b)(6) by requiring Sahs to establish that **success is not merely plausible *but probable*.**  Article 971 also nullifies the entitlement pursuant to Fed. R. Civ. P. 56(a) by requiring Sahs "to prove that it is likely, and not merely possible, that a reasonable jury would find in his favor." *Carbone*, 910 F.3d at 1353. Therefore, Article 971 requires plaintiff Sahs to make a showing that the Federal Rules 12 and 56 do not require.

[15] **a)** Amici curiae argued that Anti-SLAPP procedure is a distinct supplement to the Federal Rules because it can exist "side by side" with the Federal Rules, and it only applies to specific defendants who have been targeted on the basis of their free speech or right to petition.   (Amici Br. at 22 (first quoting *Godin*, 629 F.3d at 89; then quoting *Makaeff v. Trump University, LLC*, 736 F.3d 1180, 1182 (9th Cir. 2013) (Wardlaw, J., concurring in the denial of rehearing en banc)). *La Liberte v. Reid*, 966 F.3d 79, 87-88 (2d Cir. 2020). *La Liberte's* panel responded, saying: "[t]he idea that the more stringent requirement of the anti-SLAPP standard is a beneficial "supplement" to the Federal Rules is a policy argument ---and fatal, because the more permissive standards of the Federal Rules likewise reflect policy judgments as to what is sufficient." citing *Shady Grove*, 559 U.S. at 401, 130 S. Ct. 1431 (explaining that because "Rule 23 permits all class actions that meet its requirements, . . . a State cannot limit that permission by . . . impos[ing] additional requirements"). *Id.* at 88. (**b**) Amici curiae also warned that refusal to apply the anti-SLAPP statute will "encourage forum shopping" and lead to "an increased burden on federal courts in this Circuit." (Amici Br. at 11.) *Id.* (also see *Godin v. Schencks*, 629 F.3d 79, 92 (1st Cir. 2010)) *La Liberte's* panel response was that to a certain extent, that may be true, but "our answer to a legal question does not turn on our workload," and fixing the potential forum shopping should be done by the Supreme Court or by Congress. *Id.*

[16] See *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1188 (9th Cir. 2013) (Watford, J., joined by Kozinski Ch. J., Paez J., and Bea, J., dissenting from denial of rehearing en banc). Judge Watford explained that *Newsham* is no longer good law (to the extent it ever was) in light of the Supreme Court's intervening decision in *Shady Grove*. See Id. at 1189 ("Just as the New York statute in *Shady Grove* impermissibly barred class actions when Rule 23 would permit them, so too California's anti-SLAPP statute bars claims at the pleading stage when Rule 12 would allow them to proceed."); see also *id.* ("The anti-SLAPP statute eviscerates Rule 56 by requiring the plaintiff to prove that she will probably prevail if the case proceeds to trial--a showing considerably more stringent than identifying material factual disputes that a jury could reasonably resolve in the plaintiff's favor.").

*written*, *does* create a conflict that can only be remedied by, essentially, rewriting the statute and creating a framework that (1) relies upon a motion to dismiss standard if the defendant is challenging the legal sufficiency of the claims and, thus, will not require the plaintiff "to present prima facie evidence supporting [their] claims" or "probability of success, and (2) requires discovery to occur "with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court" if the alleged anti-SLAPP motion under § 425.16(b)(1) is based upon "factual sufficiency of the claim" and, for such motions, will apply a pure Rule 56 standard. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833-35 (9th Cir.), amended, 897 F.3d 1224 (9th Cir. 2018). It was only through effectively rewriting the standards for § 425.16 – and making the "probability of success" language meaningless – that the Ninth Circuit was able to credibly assert that the federal rules and California's anti-SLAPP did not impermissibly conflict and collide. *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1143 (9th Cir. 2022) (finding no conflict exists because of special standards set out in *Planned Parenthood*, 890 F.3d at 834 and using this as an excuse as to why the Supreme Court's decision in *Shady Grove* did not change its analysis.)

Unlike the Ninth Circuit and its treatment of § 425.16, the Fifth Circuit has not created a body of caselaw rewriting and reframing the mandates of Article 971, nor is it incumbent on this court to create an entirely new judicial scheme for analyzing motions under Article 971. As such, the reasoning in *La Liberte*, which focuses on the language of the anti-SLAPP statute at issue – which mirror's Louisiana's – and the general propositions of law that are equally applicable here, is more persuasive than *CoreCentric.*

## II. **Conclusion**

Article 971 impermissibly conflicts with the Federal Rules, such as Federal Rules 12 and

56 and should not be applied in federal court. Article 971 is procedural article, and a federal court should not apply it when sitting in diversity. Assuming however that Article 971 is substantive and not procedural, then there is no doubt that Article 971 must yield to the Federal Rules of Civil Procedure because Article 971 directly conflicts with the pre-trial dismissal mechanisms of Federal Rules 12 and 56. As aptly stated in the concurring opinion of Chief Judge Kozinski in *Makaeff v. Trump*: "Federal courts have no business applying exotic state procedural rules which, of necessity, disrupt the comprehensive scheme embodied in the Federal Rules, our jurisdictional statutes and Supreme Court interpretations thereof." 715 F.3d 254, 275 (9th Cir. 2013) (Kozinski, C.J., concurring)

Dated: **April 7, 2025.**                                   Respectfully submitted,

By: /s/_Andrew C. Stebbins
Andrew C. Stebbins
(Ohio Bar No. 0086387) (*pro hac vice*)
Buckingham Doolittle & Burroughs LLC
1375 E. 9th Street, Suite 1700
Cleveland, OH 44114
Telephone Office: (216) 736-4233
Email: astebbins@bdblaw.com

John W. Carpenter (La. Bar No. 03940)
Law Offices of John W. Carpenter, LLC
201 St Charles Ave., Suite 2500
New Orleans, La. 70170
Telephone Office: (504) 599-5955
Telephone Cell: (415) 577-0698
Email: john@jwcarpenterlaw.com

Elizabeth Bagert Carpenter, Esq. (La. Bar No. 31653)
Law Office of Elizabeth Bagert Carpenter
201 St Charles Ave., Suite 2500
New Orleans, La. 70170
Telephone Office: (504) 599-5955

Telephone Cell: (504) 373-4624
Email: ebc@neworleans-criminal-defense.com

Christina N. Williams
(Ohio Bar No. 0093726) (*pro hac vice*)
Buckingham Doolittle & Burroughs LLC
1375 E. 9th Street, Suite 1700
Cleveland, OH 44114
Telephone Office: (216) 736-4234
Email: cwilliams@bdblaw.com

Attorneys for Plaintiff
Luke G. Sahs

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of April, 2025, a copy of the foregoing pleading will be served upon Defendant's counsel via the Court's electronic filing submission.

By:      /s/ Andrew C. Stebbins____

4938-1949-5731, v. 1