**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**LUKE G. SAHS,**                                                  **CIVIL ACTION**
          **Plaintiff**


**VERSUS**                                                              **NO. 24-1379**

**LOYOLA UNIVERSITY,**                                 **SECTION: "E" (1)**
**NEW ORLEANS,**
          **Defendant**


<u>**ORDER AND REASONS**</u>

Before the Court is Defendant Loyola University, New Orleans's ("Loyola") Special Motion to Strike the Plaintiff's First Amended Complaint.[1] Plaintiff Luke G. Sahs ("Plaintiff") filed an opposition.[2] Loyola filed a reply.[3] The Court ordered supplemental briefing on the applicability of Louisiana Code of Civil Procedure Article 971 in federal court.[4] Both parties filed supplemental briefing.[5]

<u>**FACTUAL BACKGROUND**</u>

Plaintiff sued Loyola for multiple alleged false and defamatory statements, negligence, and breach of contract.[6]

Plaintiff, a resident and domiciliary of Florida, attended Loyola in 2022 and 2023.[7] In January of 2023, Plaintiff attended a week-long school-sponsored trip to Honduras.[8]

---

[1] R. Doc. 43.
[2] R. Doc. 49.
[3] R. Doc. 53.
[4] R. Doc. 58.
[5] R. Doc. 61; R. Doc. 62.
[6] R. Doc. 37.
[7] *Id.* at ¶¶ 16-19.
[8] *Id.* at ¶ 19.

While on this trip, Plaintiff met Morgan Matteson ("Matteson").[9] On March 2, 2023, after returning from Honduras, Matteson allegedly reported Plaintiff to the New Orleans Police Department ("NOPD").[10] Plaintiff alleges Matteson told the NOPD that (1) Plaintiff admitted to "relentlessly stalking her"; (2) she "was fearful for her life"; (3) Plaintiff had bomb-making equipment in his dormitory room; (4) Plaintiff had chemical burns on his body; (5) Plaintiff is a Nazi; (6) Plaintiff is racist; (7) Plaintiff is a psychopath; and (8) Plaintiff published content about Matteson on social media.[11] Plaintiff alleges all of these statements are untrue.[12] Mattison allegedly filed a stalking report against Plaintiff at that time.[13]

Plaintiff alleges that on March 2, 2023 at 6:40 p.m., a "confidential, non-public Arrest Warrant with supporting Affidavit of Arrest was issued and signed by" an Orleans Parish Magistrate for Plaintiff's arrest for stalking Matteson.[14] Plaintiff alleges that on that same day the NOPD sent four officers to Loyola's campus to arrest Plaintiff.[15] Two Loyola private security employees, one of whom was Sergeant Damon Bell ("Bell"), allegedly accompanied the four NOPD officers.[16] Plaintiff alleges the NOPD officers and Loyola private security employees first went to Plaintiff's dormitory room.[17] Plaintiff alleges the NOPD officers and Loyola private security employees conducted a search of Plaintiff's dormitory room and found no chemical materials or weapons.[18] Plaintiff alleges the

---

[9] *Id.* at ¶¶ 20-23.
[10] *Id.* at ¶¶ 28-29; R. Doc. 37-1 at p. 2.
[11] R. Doc. 37 at ¶ 29.
[12] *Id.* at ¶ 30.
[13] *Id.* at ¶ 32.
[14] *Id.* at ¶ 33.
[15] *Id.* at ¶ 41.
[16] *Id.*; R. Doc. 49 at p. 5.
[17] R. Doc. 37 at ¶ 42.
[18] *Id.* at ¶ 45

NOPD officers and Loyola private security employees next went to a Loyola dining room.[19] Plaintiff alleges an NOPD officer arrested him in the Loyola dining room.[20]

Plaintiff alleges that, at some point on March 2, 2023, after Plaintiff's arrest, Bell spoke with Kloe Witt ("Witt"), a Loyola student reporter for Loyola's Maroon Newspaper (the "Maroon"), at the LUPD police station.[21] Witt allegedly recorded Bell's statements.[22] Plaintiff alleges Bell told Witt that: (1) Plaintiff "was in possession of chemical materials that can be used to kill people"; (2) "they believe [Plaintiff] will be brought up on terroristic threat charges"; and (3) Plaintiff "made social media posts regarding the student who completed the report, spreading personal information regarding them such as the individual's nationality and family."[23] Plaintiff alleges that, at the time Bell made these statements, the search of Plaintiff's dormitory room, in which Bell participated and which allegedly revealed no weapons or dangerous materials, had been completed.[24] Plaintiff alleges that the information concerning his arrest, arrest warrant, and affidavit for arrest was "confidential and not meant for public dissemination" at the time Bell allegedly made the above statements.[25]

Plaintiff alleges Bell's statements to Witt were false and that Bell knew them to be false.[26] Bell allegedly made a copy of Plaintiff's arrest warrant and affidavit for arrest and gave it to Witt.[27] Plaintiff alleges Witt left the LUPD police station and wrote a news article

---

[19] *Id.* at ¶ 46.
[20] *Id.*
[21] *Id.* at ¶ 60; R. Doc. 43-3.
[22] R. Doc. 37 at ¶ 61.
[23] *Id.* at ¶ 63.
[24] *Id.* at ¶ 64.
[25] *Id.* at ¶ 69.
[26] *Id.* at ¶¶ 65-66.
[27] *Id.* at ¶¶ 67-68.

for the Maroon.[28] "On the evening of March 2, 2023," the Maroon allegedly published Witt's article (the "First Article") on the internet.[29] Witt's article allegedly contains the following false statements: (1) "Loyola police said [Plaintiff] was in possession of chemical materials that can be used to kill people"; (2) "LUPD said they believe [Plaintiff] will be brought up on terroristic threat charges"; and (3) "LUPD said [Plaintiff] made social media posts regarding the student who completed the report, spreading personal information regarding them [with] such as the individual's nationality and family."[30] Plaintiff alleges Witt's article was disseminated "extensively within the Miami community where Plaintiff Sahs has lived his entire life."[31]

Plaintiff alleges that on March 17, 2023, Loyola removed the First Article from the online version of the Maroon and replaced it with a different article (the "Second Article") written by Michael Giusti ("Giusti"), Loyola's director of student media and a journalism professor.[32] Plaintiff alleges the Second Article contained the defamatory statement that Plaintiff's arrest "affidavit claimed [Plaintiff] was in possession of chemical materials that can be used to kill people."[33] Plaintiff alleges this is a restatement of Bell's statement that Plaintiff "was in possession of chemical materials that can be used to kill people."[34] Plaintiff alleges the Second Article did not, however, contain the other false statements found in the First Article.[35]

Plaintiff alleges the criminal stalking case against him was dismissed on January

---

[28] *Id.* at ¶ 70.
[29] *Id.* at ¶ 71.
[30] *Id.* at ¶ 72.
[31] *Id.* at ¶ 77.
[32] *Id.* at ¶ 102; R. Doc. 43-8 at ¶ 3.
[33] R. Doc. 37 at ¶ 104.
[34] *Id.* at ¶ 117.
[35] *Id.* at ¶ 116.

22, 2024 for lack of evidence.[36] Plaintiff alleges there were never any charges against him related to weapons or chemical materials.[37]

Plaintiff brings causes of action for slander, slander per se, defamation, defamation per se, defamation by implication, negligence, negligent infliction of emotional distress, vicarious liability, breach of contract, and breach of covenant of good faith and fair dealing.[38]

## PROCEDURAL HISTORY

On February 27, 2024, Plaintiff filed a complaint in the United States District Court for the Southern District of Florida.[39] Loyola responded with a motion to dismiss for failure to state a claim and for lack of personal jurisdiction.[40] On May 29, 2024, the Southern District of Florida found that it lacked personal jurisdiction over Loyola and transferred this case to this Court.[41]

With leave of court,[42] Plaintiff filed a first amended complaint on September 23, 2024.[43] On October 21, 2024, Loyola filed an answer to Plaintiff's first amended complaint.[44] On October 22, 2024, Loyola filed a Louisiana Code of Civil Procedure article 971 Special Motion to Strike Plaintiff's first amended complaint.[45]

## CHOICE OF LAW

This case was filed in the Southern District of Florida and transferred to the

---

[36] *Id.* at ¶ 118.
[37] *Id.* at ¶ 119.
[38] *Id.* at ¶¶ 124-230.
[39] R. Doc. 1.
[40] R. Doc. 12.
[41] R. Doc. 17.
[42] R. Doc. 36.
[43] R. Doc. 37.
[44] R. Doc. 40.
[45] R. Doc. 43.

Eastern District of Louisiana because the Southern District of Florida lacked personal jurisdiction over Loyola.[46] The Southern District of Florida reasoned that "[n]one of the alleged tortious activity that [Plaintiff] attributes to Loyola occurred in Florida" making jurisdiction under Florida's long-arm statute unavailable.[47] At Plaintiff's request, the Southern District of Florida transferred Plaintiff's action to the Eastern District of Louisiana rather than dismissing the case.[48]

"The choice-of-law rules of the transferee state apply if a diversity suit was transferred from a district court that had no personal jurisdiction over the defendant."[49] Thus, the Court will apply Louisiana conflicts law to determine whether Louisiana or Florida substantive law governs this case. Louisiana Civil Code article 3515 contains the general principles for choice of law issues under Louisiana law:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

Civil Code article 3542 provides the general rule for choosing the law applicable to actions in tort:

> Except as otherwise provided in this Title, an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would

---

[46] R. Doc. 17.
[47] *Id.* at pp. 4-5.
[48] *Id.* at p. 5.
[49] *Nat'l Union Fire Ins. Co. v. Am. Eurocopter Corp.*, 692 F.3d 405, 408 n.3 (5th Cir. 2012) (citing *Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1110-11 (5th Cir. 1981)).

be most seriously impaired if its law were not applied to that issue.

That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.

Loyola argues that, applying Louisiana choice of law principles, Louisiana law controls in this case because (1) Loyola allegedly harmed Plaintiff in New Orleans, even if Plaintiff is domiciled in Florida and alleges that he suffered damages in Florida; (2) Loyola is domiciled in Louisiana and Plaintiff resided on Loyola's campus in Louisiana when the conduct alleged in Plaintiff's complaint occurred; (3) "the parties' relationship was centered in Louisiana"; (4) all of the alleged wrongful conduct occurred in Louisiana; and (5) Louisiana has a greater interest than Florida in repairing the consequences of the alleged wrongful acts.[50]

Regarding Plaintiff's claims,[51] all allegations in Plaintiff's complaint relate to Loyola's conduct in Louisiana.[52] All events giving rise to Plaintiff's claims occurred in Louisiana.[53] Loyola is domiciled in Louisiana.[54] Plaintiff suffered injuries in Louisiana when he was arrested and criminally charged in Louisiana.[55] The parties' relationship is centered in Louisiana because Plaintiff attended Loyola in Louisiana.[56] Florida's only

---

[50] R. Doc. 43-1 at pp. 10-11.
[51] These claims include slander, slander per se, defamation, defamation per se, defamation by implication, negligence, negligent infliction of emotional distress, vicarious liability.
[52] *See generally* R. Doc. 37.
[53] *See generally id.*
[54] *Id.* at ¶ 3.
[55] *Id.* at ¶¶ 38, 40, 46, 118-19.
[56] *Id.* at ¶¶ 2-3, 15.

connection to this suit is that Plaintiff is domiciled in Florida and allegedly suffered harm there.[57] As a result, Louisiana's policies will be most seriously impaired if its law is not applied to Plaintiff's claims.[58]

In opposition, Plaintiff argues Florida state law applies based on *Van Dusen v. Barrack*, 376 U.S. 612 (1964).[59] Plaintiff's arguments based on *Van Dusen* are unpersuasive. In *Van Dusen*, the Court held "that in cases . . . where the defendants seek transfer [under 28 U.S.C. § 1404(a)], the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue."[60] The transfer in this case was not under § 1404(a).[61] Instead, the transfer in this case was the result of the Southern District of Florida's lack of personal jurisdiction over Loyola.[62]

The Court will apply Louisiana's choice of law rules and apply Louisiana law because Louisiana's policies would be most seriously impaired if its law were not applied.

## **LOUISIANA CODE OF CIVIL PROCEDURE ARTICLE 971**

Louisiana Code of Civil Procedure article 971 provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.

"A number of state legislatures have expressed concerns over the use (or abuse) of lawsuits that have the purpose or effect of chilling the exercise of First Amendment rights.

---

[57] *Id.* at ¶¶ 1-2, 77-79, 83-84, 86, 102, 121-22.
[58] *In re N.Y. Life Ins. Co. Agents' Class Claimants Solicitation Litig.*, 92 F. Supp. 2d 564, 568 (E.D. La. 1997); *Denmark v. Tzimas*, 871 F. Supp. 261, 271 n.12 (E.D. La. 1994); *Fietz v. Southland Nat'l Ins. Co.*, 484 F. Supp. 2d 535, 550-51 (W.D. La. 2007).
[59] R. Doc. 49 at p. 14.
[60] 376 U.S. at 639.
[61] R. Doc. 17.
[62] *Id.*

These suits are commonly referred to as 'strategic lawsuits against public participation,' or 'SLAPPs.'"[63] In reaction to SLAPPs, "some states have provided a procedural method—often called a 'special motion to strike' but also known as an 'anti-SLAPP motion' . . . —to weed out and dismiss meritless claims early in litigation."[64] Anti-SLAPP provisions save "defendants the cost and burden of trial and minimize[ ] the chilling effect of" SLAPPs and enable "meritorious claims" to proceed.[65]

Article 971 of the Louisiana Code of Civil Procedure is an example of an anti-SLAPP statute.[66] The Louisiana legislature explained the purpose of Article 971:

> The legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. The legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, it is the intention of the legislature that the Article enacted pursuant to this Act shall be construed broadly.[67]

In Louisiana's anti-SLAPP statute, an "[a]ct in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" includes: "Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest;"[68] and "Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of

---

[63] *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 169 (5th Cir. 2009).
[64] *Id.*
[65] *Id.*
[66] *Id.*
[67] *Thomas v. City of Monroe*, 36,526, p. 6 (La. App. 2 Cir. 12/18/02), 833 So. 2d 1282, 1286 (quoting No. 734, § 1, 1999 La. Acts Section 2).
[68] La. C. Civ. Proc. art. 971F.(1)(c).

public interest."[69]

"Article 971 establishes a burden-shifting analysis for weeding out frivolous claims. To succeed on an Article 971 motion, the defendant must first make a prima facie showing that Article 971 covers the activity underlying the suit."[70] This means "the defendant must establish that a cause of action against him arises from an act by him in furtherance of the exercise of his right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue."[71] If the defendant is able to make this showing, "the burden then shifts to the plaintiff to demonstrate a probability of success on his claim."[72] The Fifth Circuit has determined the "'probability of success' standard does not permit courts to weigh evidence, assess credibility, or resolve disputed issues of material fact."[73] "If the plaintiff can demonstrate a probability of success on any of his claims, then the special motion to strike must fail."[74]

The Court must determine whether state or federal law applies in this diversity action. Ordinarily, the Court would begin with an *Erie* analysis. Under *Erie*, whether state or federal law applies in a diversity case depends on whether the state law is substantive or procedural. "Federal courts sitting in diversity apply federal procedural rules and state substantive law."[75] Article 971 is found in Louisiana's Code of Civil Procedure and an argument could be made that it is a procedural rule and, as a result, not applicable in

---

[69] *Id.* at F.(1)(d).

[70] *Henry*, 566 F.3d at 170.

[71] *Id.* (internal alterations omitted) (quoting *Starr v. Boudreaux*, 2007-0652, p. 4 (La. App. 1 Cir. 12/21/07), 978 So. 2d 384, 389).

[72] *Id.*

[73] *Lozovyy v. Kurtz*, 813 F.3d 576, 586 (5th Cir. 2015).

[74] *Shelton v. Pavon*, 2017-0482, p. 6 (La. 10/18/17), 236 So. 3d 1233, 1237 (citing *Darden v. Smith*, 03-1144 (La. App. 3 Cir. 6/30/04), 879 So. 2d 390, 397).

[75] *Guerrero v. Brewer*, No. 92-2948, 1992 WL 364772, at *1 (E.D. La. Nov. 20, 1992) (citing *Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965)).

federal court.[76] The Court need not determine whether Article 971 is procedural or substantive because, even if it is substantive, the Court finds it does not apply in federal court because it conflicts with the Federal Rules.[77]

In *Shady Grove Orthopedic Assocs., P.A. v. Allstate Insurance Co.*, the United States Supreme Court explained that to ascertain whether there is a conflict between a state law or rule and the Federal Rules, the court "must first determine whether [a Federal Rule of Civil Procedure] answers the question in dispute. If it does, it governs."[78] In this case, the question is whether Plaintiff's case must be dismissed before trial.[79] As explained by the Fifth Circuit in *Klocke v. Watson*, *Shady Grove* held "that a state rule conflicts with a federal procedural rule when it imposes additional procedural requirements not found in the federal rules. The rules 'answer the same question' when each specifies requirements for a case to proceed at the same stage of litigation."[80]

There is a circuit split on whether Federal Rules of Civil Procedure "12 and 56, which govern dismissal and summary judgment motions, respectively, answer the same question[s] as" various states's anti-SLAPP statutes and, therefore, whether a state's anti-SLAPP statute may be applied in federal court. The First and Ninth Circuits have held that Maine and California's anti-SLAPP statutes, respectively, apply in federal court.[81] The

---

[76] *Klocke v. Watson*, 936 F.3d 240, 244-45 (5th Cir. 2019); *Lee v. Pennington*, 2002-0381, p. 4 (La. App. 4 Cir. 10/16/02), 830 So. 2d 1037, 1041 ("Article 971 was enacted by the legislature as a procedural device to be used early in legal proceedings to screen meritless claims pursued to chill one's constitutional rights under the First Amendment of the United States Constitution to freedom of speech and press."); *Cuba v. Pylant*, 814 F.3d 701, 719 (5th Cir. 2016) (Graves, J., dissenting); LA. C. CIV. PROC. art. 971.

[77] *Klocke*, 936 F.3d at 244-45 (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)).

[78] 559 U.S. at 398 (first citing *Woods*, 480 U.S. at 4-5; then *Hanna*, 380 U.S. at 463-64); *Klocke*, 936 F.3d at 245.

[79] *Klocke* 936 F.3d at 245 (citing *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333-34 (D.C. Cir. 2015)).

[80] *Id.* at 244-45.

[81] *Godin v. Schencks*, 629 F.3d 79, 86-92 (1st Cir. 2010); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970-73 (9th Cir. 1999); *see also Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014).

First Circuit reasoned that Rules 12 and 56 do not answer the same question as Maine's anti-SLAPP statute.[82] The Ninth Circuit held that California's anti-SLAPP statute applied in federal court because it does not conflict with the Federal Rules.[83] Conversely, the D.C. Circuit, Second Circuit, Fifth Circuit (applying Texas's anti-SLAPP statute), and Eleventh Circuit have held that the District of Columbia, California, Texas, and Georgia anti-SLAPP statutes, respectively, do not apply in federal court because Rules 12 and 56 answer the same questions as these state anti-SLAPP statutes.[84]

The Fifth Circuit has not directly addressed whether Louisiana's Article 971 answers the same questions as Rules 12 and 56 and therefore conflicts with the Federal Rules. In *Henry v. Lake Charles American Press, L.L.C.*, the first case commenting on the issue, the Fifth Circuit, without analysis, held that "Louisiana law, including the nominally-procedural Article 971, governs this diversity case."[85] *Henry* pre-dated the Supreme Court's decision in *Shady Grove*.[86]

Following *Henry* and *Shady Grove*, the Fifth Circuit has had several opportunities to address whether Article 971 may be properly applied in federal court cases but has declined to re-examine *Henry* or otherwise reach the issue. First, in *Lozovyy v. Kurtz*, the Fifth Circuit "decline[d] to revisit *Henry*'s pronouncement" that Louisiana's Article 971

---

[82] *Godin*, 629 F.3d at 86-92.

[83] *Newsham*, 190 F.3d at 970-73. *Newsham* issued before the Supreme Court's decision in *Shady Grove*, in which the Supreme Court first held that a state law or rule does not apply in federal court if a Federal Rule answers the same question as the state law or rule. *Shady Grove*, 559 U.S. at 398-99; *see also CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1140-43 (9th Cir. 2022) (affirming *Newsham*'s holding that California's anti-SLAPP statute does apply in federal court post-*Shady Grove*).

[84] *Abbas*, 783 F.3d at 470-74; *La Liberte v. Reid*, 966 F.3d 79, 85-88 (2d Cir. 2020); *Klocke*, 936 F.3d at 244-49; *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349-57 (11th Cir. 2018).

[85] 566 F.3d at 169 (first citing *Erie R. Co.*, 304 U.S. at 78; then *Welborn v. State Farm Mut. Auto. Ins. Co.*, 480 F.3d 685, 687 (5th Cir. 2007); and then *Newsham*, 190 F.3d at 972-73; and then *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1207 (9th Cir. 2005) (per curiam)).

[86] 559 U.S. at 398-99.

applies in Louisiana federal courts and declined to "address . . . Article 971's applicability in federal court under the *Erie* doctrine, because [the plaintiff] failed to 'raise the issue to such a degree that the trial court [could] rule on it.'"[87] Instead, the Fifth Circuit "'proceed[ed by] assuming' [Article 971] does not conflict with the Federal Rules."[88]

Second, in *Block v. Tanenhaus* ("*Block I*"), the Fifth Circuit rejected the defendant's argument that Article 971 does not apply in a federal court case applying Louisiana law only "because it provides a stricter standard than Rule 56," but declined to "conclusively resolve . . . whether Article 971 applies in diversity cases."[89] The Fifth Circuit reasoned that "a non-movant's burden in opposing an Article 971 motion to strike is the same as that of a non-movant opposing summary judgment under Rule 56."[90] This reasoning led the Fifth Circuit to conclude that Article 971 does not conflict with Rule 56 and thus does not present an *Erie* issue.[91] The Fifth Circuit further explained that the defendant "did not argue in his briefs that any feature other than a burden greater than that imposed by Rule 56 would cause Article 971 to conflict."[92] Accordingly, the defendant waived the issues of whether "Article 971's burden-shifting dynamic, discovery prevention, and mandatory attorney's fees cause Article 971 to conflict with Rule 56."[93] The Fifth Circuit vacated and remanded the district court's decision in *Block I* to grant the defendant's Article 971 motion to strike because the district court lacked the Fifth Circuit's

---

[87] 813 F.3d at 583 (citing *NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 752-53 (5th Cir. 2014)).
[88] *Id.* (citing *NCDR, L.L.C.*, 745 F.3d at 752-53).
[89] 815 F.3d 218, 221 & n.3 (citing *Lozovyy*, 813 F.3d at 583, 586).
[90] *Id.* at 221.
[91] *Id.*
[92] *Id.* at 221 n.3.
[93] *Id.* at 221 n.3 (citing *Zastrow v. Hous. Auto Imports Greenway Ltd.*, 789 F.3d 553, 562 n.8 (5th Cir. 2015)).

"recent guidance in *Lozovyy*."[94]

On *Block I*'s remand, the district court again granted the defendant's Article 971 motion to strike.[95] The plaintiff appealed, which led to the Fifth Circuit's second opinion in *Block v. Tanenhaus* ("*Block II*").[96] In *Block II*, the Fifth Circuit, for a third time, "assume[d] without deciding that Article 971 applies" in federal court.[97] The *Block II* court held the defendant "forfeited" "his arguments against application of Article 971" because (1) the *Block I* court previously determined the defendant forfeited his arguments and (2) the defendant did not raise the arguments in his *Block I* appeal.[98]

After the Fifth Circuit's opinions in *Henry*, *Lozovyy*, *Block I*, and *Block II*, all applying Louisiana's anti-SLAPP statute, the Fifth Circuit decided *Klocke*.[99] In *Klocke*, the Fifth Circuit held that the Texas Citizens Participation Act ("TCPA"), does not apply in federal court.[100] Like Article 971, the TCPA is an anti-SLAPP statute.[101] Under the TCPA's "statutory burden-shifting framework, if a movant for TCPA relief shows 'by a preponderance of the evidence' that the action is based on the movant's exercise of the listed rights, a court must dismiss the case."[102] However, "if the non-movant 'establishes by clear and specific evidence a prima facie case for each element of the claim in question,' the court may not dismiss."[103] Then, the burden shifts back to the movant to "show 'by a

---

[94] *Id.*
[95] *Block v. Tanenhaus* ("*Block II*"), 867 F.3d 585, 588 (5th Cir. 2017) (per curiam).
[96] 867 F.3d 585.
[97] *Id.* at 589 (first citing *Block I*, 815 F.3d at 221 n.3; then *Lozovyy*, 813 F.3d at 582-83).
[98] *Id.* (first citing *Block I*, 815 F.3d at 221 n.3; then *Lindquist v. City of Pasadena*, 669 F.3d 225, 239 (5th Cir. 2012)).
[99] *Klocke*, 936 F.3d 240.
[100] *Id.* at 244-49.
[101] *Id.* at 244.
[102] *Id.* (citing Tex. Civ. Prac. & Rem. Code § 27.005(b)(1)-(3)).
[103] *Id.* (citing Tex. Civ. Prac. & Rem. Code § 27.005(c)).

preponderance of the evidence each essential element of a valid defense' to the claim."[104] A court evaluating a TCPA motion to dismiss may review pleadings and affidavits.[105] "Discovery is generally stayed while the motion is pending, subject to limited relevant discovery for good cause shown."[106]

Relying principally on the D.C. Circuit's opinion in *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328 (D.C. Cir. 2015) and the Supreme Court's opinion in *Shady Grove*, the Fifth Circuit in *Klocke* concluded the TCPA does not apply in federal court.[107] The Fifth Circuit endorsed the D.C. Circuit's finding in *Abbas* "that Rules 12 and 56 . . . answer the same question as the anti-SLAPP statute: what are the circumstances under which a court must dismiss a case before trial?"[108] The Fifth Circuit reasoned that "[b]ecause the TCPA's burden-shifting framework imposes additional requirements beyond those found in Rules 12 and 56 and answers the same question as those rules, the state law cannot apply in federal court."[109]

In *Klocke*, the Fifth Circuit explained the conflict between the TCPA and Rules 12 and 56. "Under Rule 12(b)(6), a federal court may dismiss a case for failure to state a claim upon which relief may be granted if, accepting all well-pleaded factual allegations as true, the complaint does not state a plausible claim for relief."[110] "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"[111] Under Rule 56, a "court shall grant

---

[104] *Id.* (citing Tex. Civ. Prac. & Rem. Code § 27.005(d)).
[105] *Id.* (citing Tex. Civ. Prac. & Rem. Code § 27.006(a)).
[106] *Id.* (first citing Tex. Civ. Prac. & Rem. Code § 27.003(c); then Tex. Civ. Prac. & Rem. Code § 27.006(b)).
[107] 783 F.3d 1328; 559 U.S. 393.
[108] *Klocke*, 936 F.3d at 245 (citing *Abbas*, 783 F.3d at 1333-34).
[109] *Id.*
[110] *Id.* at 245-46 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).
[111] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[112] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[113]

The Fifth Circuit found that the TCPA "imposes additional requirements [beyond those imposed by Rules 12 and 56] that demand judicial weighing of evidence."[114] As examples of the TCPA's additional requirements, the Fifth Circuit cited the TCPA's requirements that (1) courts "determine 'by a preponderance of the evidence' whether the action relates to a party's exercise of First Amendment rights,"[115] and (2) courts "determine whether there is 'clear and specific evidence' that a plaintiff can meet each element of his claim."[116] Considering the TCPA's imposition of these two "evidentiary weighing requirements," which are not present in the Federal Rules, and the TCPA's stay on discovery, the Fifth Circuit concluded the TCPA conflicts with Rules 12 and 56.[117]

Because the Fifth Circuit found that the TCPA answers the same question as Rules 12 and 56 and imposes additional requirements, it next analyzed whether Federal Rules 12 and 56 "are 'a valid exercise of Congress's rulemaking authority' under the Rules Enabling Act."[118] If there is a conflict between a state law or rule and the Federal Rules, the Federal Rule "must then be applied if it represents a valid exercise of Congress'

---

[112] FED. R. CIV. P. 56(a).
[113] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).
[114] *Klocke*, 936 F.3d at 246.
[115] *Id.* (quoting Tex. Civ. Prac. & Rem. Code § 27.005 (b)(1)-(3)).
[116] *Id.* (internal citations omitted) (quoting Tex. Civ. Prac. & Rem. Code § 27.005(c)). The "clear and specific evidence" standard "exceeds the plaintiff's Rule 56 burden to defeat summary judgment." *Id.*
[117] *Id.*
[118] *Id.* at 247-48 (first quoting *All Plaintiffs v. All Defendants*, 645 F.3d 329, 333 (5th Cir. 2011); then citing *Burlington N.R.R. Co. v. Woods*, 480 U.S. 1 (1987)).

rulemaking authority, which originates in the Constitution and has been bestowed on this Court by the Rules Enabling Act."[119] The Fifth Circuit determined that Federal Rules 12 and 56 "represent such a valid exercise" of Congress's rulemaking authority.[120] The Fifth Circuit held the TCPA does not apply in federal court.[121]

The defendant in *Klocke* argued that the Fifth Circuit had previously approved federal court application of Louisiana's anti-SLAPP statute, Article 971, in *Henry* and should apply the TCPA in his case.[122] The Fifth Circuit distinguished *Henry* based on its application of Louisiana's Article 971 rather than the Texas statute, highlighted *Henry*'s failure to consider "the potential overlap or conflict between the Louisiana anti-SLAPP provision and the Federal Rules," and noted that *Henry* preceded *Shady Grove*.[123]

*Klocke* precludes this Court from applying Article 971 in this diversity jurisdiction action. Like the TCPA in *Klocke*, Article 971 answers the same question as Federal Rules 12 and 56: "what are the circumstances under which a court must dismiss a case before trial?"[124] Furthermore, Article 971 "conflicts with the Federal Rules by setting up an additional hurdle a plaintiff must jump over to get to trial" and, like the TCPA, "imposes additional requirements beyond those found in Rules 12 and 56."[125]

Article 971's conflict with Rule 12 is a result of the differing standards courts use to analyze a Rule 12 motion to dismiss and an Article 971 special motion to strike. On a Rule 12(b)(6) motion to dismiss, a court analyzes the well-pleaded factual allegations in the

---

[119] *Burlington N.R.R. Co.*, 480 U.S. at 4-5.
[120] *Klocke*, 936 F.3d at 248.
[121] *Id.* at 244-49.
[122] *Id.* at 248.
[123] *Id.*
[124] *Id.* at 245 (citing *Abbas*, 783 F.3d at 1333-34).
[125] *Id.*

complaint to assess whether the plaintiff has stated a plausible claim for relief without looking to external evidence.[126] On an Article 971 special motion to strike, however, a court "determines" whether "the plaintiff has established a probability of success on the claim" considering "the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based."[127] Article 971 conflicts with Rule 12 by dictating a different standard for assessing the plaintiff's claims and allowing courts to consider and weigh evidence when deciding whether the Court must dismiss the case before trial.[128]

Article 971 also conflicts with Rule 56 due to Article 971's imposition of a burden-shifting framework different from Rule 56's framework.[129] Rule 56 places the initial burden on the movant to show there are no disputed material facts and, that, as a matter of law, it should succeed on its motion for summary judgment and then shifts the burden to the non-movant to identify a genuine dispute of material fact.[130] In contrast, Article 971 places the initial burden on the movant to make only "a *prima facie* showing that his comments were constitutionally protected and in connection with a public issue," not a showing of why the complaint should be stricken, and then shifts the burden back "to the plaintiff to demonstrate a probability of success on the claim."[131]

Judge Graves's dissent in *Cuba v. Pylant*, an appeal involving Texas's anti-SLAPP

---

[126] *Id.*

[127] La. C. Civ. Proc. art. 971A.(1)-(2).

[128] *See Henry*, 566 F.3d at 182 (citing *Estiverne v. Times-Picayune, L.L.C.*, 2006-0571, p. 4 (La. App. 4 Cir. 12/20/06), 950 So. 2d 858, 860)) (stating that Article 971 "requires more [from a plaintiff] than that which is necessary to survive a normal motion to dismiss.").

[129] Although the Fifth Circuit in *Block I* rejected the plaintiff's argument that "Article 971 does not apply in federal court if it requires the non-movant to meet a stricter burden than that imposed by Federal Rule of Civil Procedure 56," the Court did not address whether Article 971's burden-shifting framework conflicts with Rule 56 because the plaintiff waived this argument by failing to brief it. 815 F.3d at 221 & n.3.

[130] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 484 (5th Cir. 2014).

[131] *Shelton*, 236 So. 3d at 1237.

statute, lends additional support to this Court's conclusion that Article 971 does not apply in federal court.[132] Judge Graves analyzed the applicability of the TCPA in federal court under the *Erie* doctrine prior to the Fifth Circuit's decision in *Klocke*.[133] Judge Graves concluded that the TCPA is procedural "and must be ignored."[134] For the sake of completeness, Judge Graves continued his *Erie* analysis assuming the TCPA was substantive.[135] First, Judge Graves found that the TCPA "obviously" conflicts with Rule 12 because the TCPA requires courts to consider evidence whereas Rule 12 solely assesses the sufficiency of a well-pleaded complaint, even if the court finds it unlikely that the plaintiff will prevail on the claims in their complaint.[136] Second, Judge Graves found the TCPA conflicts with Rule 56. Unlike Rule 56, which "places the initial burden on the moving party and then shifts the burden to the nonmoving party to show that there is a dispute that merits trial,"[137] "the TCPA does not require the moving party to proffer reasons why the claims should be dismissed."[138] The TCPA only "requires the moving party to show the plaintiff's claims arise from the defendant's exercise of a protected right within the statute's coverage, after which the burden is placed on the non-moving party to show that their claims should proceed."[139]

Each of Judge Graves's arguments for why the TCPA conflicts with and overlays additional requirements on Rules 12 and 56 applies equally to Article 971. Article 971 conflicts with Rule 12 by allowing a court to consider and weigh evidence rather than

---

[132] 814 F.3d at 718-721 (Graves, J., dissenting).
[133] *Id.*
[134] *Id.* at 719.
[135] *Id.* at 719-20.
[136] *Id.*
[137] *Id.* at 720 (first citing *Celotex Corp.*, 477 U.S. at 323; then *Davis*, 765 F.3d at 484).
[138] *Id.* (citing Tex. Civ. Prac. & Rem. Code § 27.005(b)).
[139] *Id.*

assuming the allegations in the complaint are true. Article 971 conflicts with Rule 56 because it mandates a different burden shifting framework from Rule 56.[140] While Rule 56 places the initial burden on the movant to show why it should succeed on its motion and then shifts the burden to the non-movant to identify a genuine dispute of material fact,[141] Article 971 distinctively places the initial burden on the movant to make "a *prima facie* showing that his comments were constitutionally protected and in connection with a public issue," and then shifts the burden back "to the plaintiff to demonstrate a probability of success on the claim," rather than just showing the existence of a disputed issue of material fact.[142] Even if the Court assumes Article 971 is a substantive rule, it does not apply in federal court because it conflicts with Rules 12 and 56.

Because Article 971 answers the same question as Rules 12 and 56, the Court must now determine whether Rules 12 and 56 violate the Rules Enabling Act.[143] "[A]ny federal rule that 'really regulates procedure' is valid under the Rules Enabling Act."[144] In line with the Fifth Circuit in *Klocke*, the Court concludes Rules 12 and 56 comply with the Rules Enabling Act

> because they define the procedures for determining whether a claim is alleged in a sufficient manner in a complaint and whether there is a genuine dispute of material fact sufficient to warrant a trial. These Rules affect[ ] only the process of enforcing litigants' rights and not the rights themselves.[145]

As a result, Article 971 may not be applied in a suit in federal court based on diversity

---

[140] *See supra* at pp. 18-19.
[141] *Celotex Corp.*, 477 U.S. at 323-24; *Davis*, 765 F.3d at 484.
[142] *Shelton*, 236 So. 3d at 1237.
[143] *Klocke*, 936 F.3d at 245.
[144] *Id.* at 248 (quoting *Abbas*, 783 F.3d at 1336).
[145] *Id.* at 247-48 (quoting *Carbone*, 910 F.3d at 1357).

jurisdiction.

## **CONCLUSION**

IT IS ORDERED that Loyola's Special Motion to Strike the Plaintiff's First

Amended Complaint is **DENIED**.[146]

**New Orleans, Louisiana, this 9th day of April, 2025.**

_____

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[146] R. Doc. 43.